EMMA DUNCKEL, RESPONDENT, *v.* WILLIAM DUNCKEL, APPELLANT.

*Oral agreement by a sole legatee and executor of a deceased maker of a note, to pay it — right to enforce the agreed consideration therefor, viz., the giving of a life estate in land.*

One J. A. Dunckel, who was indebted in an amount of over $11,000, for the payment of about $7,500 of which one William Dunckel was liable as surety, died, leaving a will appointing his wife executrix and sole legatee thereunder. Soon after the death, William Dunckel promised the widow and executrix that if she would pay these debts on which he was liable, and would save him from paying the same, he would give her a life estate in certain land which had been

occupied by John A. Dunckel during his lifetime, but of which William Dunckel was the owner. The widow agreed to pay these debts, for which, at that time, it was uncertain whether the estate of the deceased would be sufficient. She subsequently paid the debts, and delivered the notes on which William Dunckel was liable, to him, and demanded the life lease of the premises which she had continued to occupy after the death of John A. Dunckel, her testator.

It was claimed by William Dunckel that there was no consideration for the contract, inasmuch as the debts in question had been paid out of the assets of the estate of the testator, who was primarily liable.

*Held*, that the plaintiff could not maintain an action against the defendant because of any money thus paid, for the reason that she had paid nothing except what she was bound to pay from the moneys belonging to the estate of her testator without regard to the agreement. (LEARNED, P. J., dissenting, on the ground that the promise was to pay the debts, whether the assets were sufficient or not.)

That the agreement was in violation of the provisions of section 8 of title 1 of chapter 7 of part 2 of the Revised Statutes, providing that " every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract or some note or memorandum thereof expressing the consideration be in writing, and be subscribed by the party by whom the lease or sale is to be made."

That while there are cases where purchasers have entered into possession of land, and paid the purchase-money or made substantial improvements and considerable expenditures thereon, in which courts of equity will specifically enforce the parol agreement, yet, in this case, there was no fraud to be frustrated, and no injustice to be prevented, and equity would not interpose on the plaintiff's behalf. (LEARNED, P. J., dissenting.)

APPEAL by the defendant from so much of a judgment, entered in the above-entitled action in the office of the clerk of the county of Montgomery on the 23d day of April, 1888, as awarded judgment against the defendant, and also from orders denying the defendant's motion for a new trial, and form an order granting an extra allowance.

The action was tried before the court and a jury at the Montgomery Circuit, and the judgment directed that, within ten days after service upon him of a certified copy thereof, the defendant, William Dunckel, should execute and deliver, duly acknowledged, to the plaintiff, Emma Dunckel, a proper and sufficient lease for her life of certain premises in the village of Fort Plain, Montgomery county, New York.

*N. C. Moak*, for the appellant.

*E. Countryman*, for the respondent.

FISH, J.:

John A. Dunckel, the husband of plaintiff and son of defendant, died on the 9th day of February, 1883. At the time of his death John A. and his wife were occupying a house and lot, in the village of Fort Plain, which was owned by the defendant. They had occupied the same for about seventeen years, paying no rent to defendant, during which time John A. paid the taxes and made improvements upon the property from time to time, which amounted in the aggregate, according to the testimony of plaintiff, to about the sum of $2,800. Before that time the defendant advanced to his son $3,000 with which to start business; and had paid $2,500 for the house and lot. When John A. died he was largely indebted to divers persons, and the defendant was indorser or surety for him upon divers notes, constituting a considerable part of the indebtedness, and was thus contingently liable to pay the notes. It was not known to a certainty whether or not the estate of the deceased was sufficient to pay his debts in full. There was some uncertainty about it. It afterwards transpired that the entire indebtedness of the estate, which plaintiff paid as executrix, was $11,147, and the assets which came into plaintiff's hands as executrix netted, in the aggregate, $11,781, sufficient in amount to pay all the indebtedness, and leave a balance, enough to cover the fees of plaintiff as executrix and $300 allowance to which she was entitled by statute. It was, also, afterwards ascertained that the sum for which defendant was so liable as surety was about $7,500.

Soon after the death of John A., and before administration upon his estate, the defendant, not knowing the exact amount of the son's estate, and being apprehensive that it might not be sufficient to pay and satisfy all of said indebtedness, so that he might be required to pay some balance of said debts from his own means, agreed orally with plaintiff that if she would pay said indebtedness, he would give her a life lease for her own life of the before-mentioned house and lot which she then continued to occupy after her husband's death.

Plaintiff herein agreed to the proposition and proceeded with her duties as executrix of her husband's estate, and with the moneys realized from her husband's estate paid the debts, paid all the notes upon which defendant was indorser or surety, and gave them up to the defendant, asking for the promised life lease. The plaintiff did not

pay any part of said indebtedness from her own money or means, and was compensated for her duties as executrix by her lawful fees. There was no money or property consideration passed between them. The plaintiff was at the time in possession and actual occupancy of the premises in question; had no occasion to move or make any change in her business or condition in consequence of the agreement. She simply continued to occupy the same as she had done while her husband was living.

There is great conflict in the testimony as to whether or not the defendant ever made the agreement found, but there was sufficient evidence to justify a finding that it was so agreed; on this appeal, the case must be treated on the assumption that such an agreement was made.

Upon the case stated this action cannot be maintained. The agreement in question is obnoxious to the provisions of section 8 of title 1 of chapter 7, part 2 of the Revised Statutes, which is as follows :

"Every contract for the leasing for a longer period than one year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made."

There are cases where, in pursuance of a parol agreement, purchasers have entered into possession of land, paid the purchase-money or made substantial improvements and considerable expenditures thereon, in which courts of equity have enforced the agreements by compelling a performance. (*Freeman* v. *Freeman*, 43 N. Y., 34; *Miller* v. *Ball*, 64 id., 286 ; *Kenyon* v. *Youlen*, 53 Hun, 592.) However, in the case before us, we have not one which comes within the principle thus decided. The plaintiff herein has done nothing to entitle her to the relief demanded. There is no fraud to be frustrated, no injustice to be prevented. Equity interposes only in such cases on account of what a party has done, as where the parol purchaser has fulfilled and has invested either money or other value which will be lost to him and gained by the other party, unless the latter be required to perform his part of the parol agreement. In other words, equity is allowed to relieve the stern features of the statute of frauds only when it it necessary to do so, and in cases

where the enforcement of the statute would work a fraud rather than prevent one.

The full payment of the purchase-money in a parol purchase of land, standing alone, does not entitle a party to relief as against the statute. There must be some further action. In cases of the purchase of lands in general, the taking possession and making improvements after payment of the purchase-money has been held a necessary condition. (*Malins* v. *Brown*, 4 N. Y., 403; *Miller* v. *Ball, supra ; Freeman* v. *Freeman, supra ; Wheeler* v. *Reynolds,* 66 N. Y., 231.)

There was no sufficient consideration passing between the parties to uphold the agreement; whatever conversation did pass between plaintiff and defendant after the death of John A. Dunckel, regarding the subject of controversy, had relation to the estate of the deceased. John A. Dunckel had left a will in which he had made plaintiff his sole executrix and residuary legatee. She was about to take charge of the estate in her capacity as executrix, in the discharge of the duties of which she was bound to apply the same to the payment of the debts of her deceased husband. If defendant agreed to anything, it was simply this ; if she applied the assets of the estate to the payment of the debts in full, so that the defendant should not be called upon to pay any part of them, he would let her stay where she was, would not disturb her possession, but would give her a lease for her life for the house and lot. It was only a good natured promise by an old man to the widow, which created no legal obligation on either side, and, as a fact, the plaintiff did nothing but apply the money of the estate as it was her duty to do, and which the law would have enforced. This agreement was of no more legal force than would have been a promise that if she discharged the duties of her trust properly and according to law, he would make her a handsome present, or would give her additional compensation.

It is not a matter of much moment in this case what was the arrangement between the father and son at the time he purchased the house. The defendant bought the property for $2,500, and allowed his son to occupy the same for seventeen years without paying rent. Prior to that time he had advanced to his son $3,000 to go into business. Suppose, then, at the time he bought it, he had

said he was buying it for his son, it was an expression, as between father and son, having a different meaning than if between strangers. Every father as he advances in years is laboring for his children and saving his estate for them. Then suppose the story of the plaintiff to be true, that in the course of seventeen years her husband had laid out $2,800 in improvements, he would scarcely by that process have paid a rent equal to the interest on the purchase-money, and would not have reduced the advance of $3,000 before advanced to him. In the year 1866, when defendant made the purchase, the rate of interest was seven per cent; so that the interest on $2,500 ran at the rate of $175 per year for the seventeen years, and exceeded the amount of the son's repairs and improvements. As between the father and son while living, there was no legal or equitable right on the part of the son to demand a deed.

This action is not to be decided upon any sentimental idea of what an old father ought, in good nature, to do for his children or their widows. When relatives resort to the courts to enforce alleged legal demands, they must be governed by the same rules and bearings as other hostile parties.

Finally, as an independent proposition, this plaintiff has not done anything or paid anything which gives her a claim of any sort against defendant. She could not maintain an action against defendant for any money paid, because she has paid nothing except what she was bound to pay from the moneys belonging to the estate, without regard to the agreement. He owes her nothing for services. All she has done was to discharge the duties of executrix, for which she was paid out of the estate. It was not part of the agreement that she was to act as executrix, nor did she assume that duty because of the agreement. She expected to and did accept the trust because the will of her husband so appointed. The defendant agreed with her that if she would do her duty in the discharge of that trust, as the law itself required, he would give her the life lease. There was, therefore, no legal consideration for the agreement.

The finding of the Special Term that the plaintiff was entitled to judgment against the defendant, and requiring him to execute to plaintiff a life lease of the premises was error, and the judgment should be reversed.

Let judgment be reversed and new trial granted, costs to abide event.

LANDON, J.:

The plaintiff paid the notes from the ample assets of the estate of which she was executrix, as it was her duty to do, irrespective of any promise on her part. So far as her promise to the defendant contemplated her payment of any sum beyond what the assets might prove ample to pay, it was an oral promise to be surety for the payment of her deceased husband's debts, it was void in law; if we assume it to be valid, it has never matured; she has had no occasion to perform it, and has not performed it. She has simply discharged her duty as executrix, and the defendant has received satisfaction from the estate and nothing from the plaintiff personally. No equity, therefore, exists in plaintiff's favor to compel the defendant to perform his concurrent promise in her favor.

I concur with my brother FISH.

LEARNED, P. J. (dissenting):

The plaintiff is the widow, executrix and sole legatee of John A. Dunckel, who died February 9, 1883, and who was the son of defendant. Since 1866 the defendant has been the owner in fee of the premises in question, but they were occupied by John A. Dunckel from that time until his death.

At the time of his death John A. Dunckel was largely indebted. The total indebtedness turned out to be over $11,000; on about $7,500 of which the defendant was liable as surety in some form. The defendant was apprehensive that he might have to pay these debts or part of them.

Soon after the death of John A., and on or about February 12, 1883, and before the probate of the will, the defendant promised the plaintiff that if she would pay these debts, on which he was liable, and would save him from paying the same, he would give her a life lease of the premises.

The plaintiff did pay all these debts, most of them in February and March, 1883, and the remaining debt when payable January 26, 1884; and delivered the notes on which he was liable to defendant and requested the life lease.

From and after the death of said John A. the plaintiff continued

to occupy and still occupies said premises. It does not appear that John A. had any lease of the premises.

The jury found the verbal contract as above stated, and the payment of the debts by plaintiff relying thereon, and these findings are approved and adopted by the court. It is evident that, at the time when the agreement so found by the jury was made, it was not known exactly to how much the property of the deceased would amount. He had carried on a store, and it was arranged among the parties interested that the stock should be sold at seventy-five cents on the dollar, since some purchasers were ready to buy.

There was received by plaintiff from the assets about $10,600. Her commissions were about $300. There are some other items amounting to about $200. It is stated that plaintiff received some rent of the store for three years after her husband's death. The respondent claims that there is a mistake as to the amount of such rent. But that is of little consequence. Practically, the assets were very near the amount of the debts.

The defendant insists that there was no consideration for the contract because plaintiff paid the debts out of the assets, as was her duty. But the question is, what did she agree to do? If she only agreed to apply the assets to the debts, then it is true there was no consideration. If, however, she bound herself personally to pay them, then she assumed a liability which she would have to perform whether the assets should prove to be sufficient or not. And as the matter was then uncertain, no inventory having been taken, and as she was not then executrix, she took a risk upon herself personally. The defendant was under a contingent liability. He wished to be relieved from this quickly and surely. It was not then certain that she would act as executrix. Therefore, he induced the plaintiff to agree to pay the debts, including those on which he was liable, in consideration that he would give her a life lease of the property. There is evidence that defendant thought there was not enough to pay the debts. The plaintiff had been a dressmaker for some five years before her husband's death, and, according to her testimony, she told defendant she would pay every debt "if I could draw my needle long enough to do so." Hence it appears that the agreement found by the jury was her personal obligation, and not a mere agreement to apply the assets faithfully.

In *Maddison* v. *Alderson* (L. R., 8 App. Cases, at 474), it is said that the statute of frauds does not avoid the contract, but only bars remedies.    If we look at 2 Revised Statutes (m. p. 135, § 10), which preserves the power to compel specific performance, we shall see that the same must be said of our statute.    For that section recognizes the validity of the contracts in so far as it authorizes the court to compel performance.    The question then remains, viz.: Is the present a case in which the court should grant specific performance?

*First.*  The plaintiff has fully performed her part of the agreement.    When the agreement was made neither party could have understood that the plaintiff was to pay the debts exclusively out of her own property other than that of the estate.    Both knew that she could apply, and ought to apply, to them the assets of the estate. But she herself owned the assets subject to the debts, and she agreed, as the jury have found, that, at all events, she would pay the debts and thus save the defendant from loss.    This was not a promise to pay the debt of another.  (*Leonard* v. *Vredenburgh,* 8 Johns., 29.) And the defendant, in consideration of that agreement, promised her the life lease.    What was the use of making any agreement if its meaning was only that she was to apply the assets to the debts? Evidently more than this was meant.    She has fulfilled her part of the agreement.    Possibly, in selling the stock at once and in a hurry, she may have, as sole legatee, suffered some loss.    And, evidently, at that time the defendant was uneasy and anxious rather to remove his own liability than to have the estate managed to the best advantage for her.    She yielded to his wishes, sold off the property at once and closed up the estate before the statute required.    Cannot a surety make an agreement with some third party to save him harmless from liability as surety?    Is not such an agreement valid even though, in the end, the principal debtor shall pay the debt?    That was the agreement which the defendant made with the plaintiff

It is very possible that the best authorities hold that the mere payment of even the full consideration does not, of itself, justify the court in granting specific performance of a parol agreement. There must be some additional element, as some authorities hold; and that element exists here.

For, second. The plaintiff is in possession.

Now, it is true that if the purchaser, under a parol agreement, gets possession by trespass or against the will of the owner, such possession avails him nothing. So, too, if he had been in possession before the contract, under some other title, then the possession is not referable to the contract. But neither of those circumstances exist here. The plaintiff is not in by trespass or against the consent of the owner. She has remained in undisturbed possession since her husband's death in February, 1883, and not till February, 1886, after she had paid all the defendant's liabilities, did he give her a notice to quit. There is no evidence that the defendant could not have compelled immediate possession after the husband's death. The jury have found that John A. had no contract for the property. Probably, then, he was a mere strict common-law tenant at will (4 Kent's Com., 114), and the personal representative of the deceased lessee would seem to have no right to possession. (1 Wash. on Real Prop., 373.) John A. paid no rent, but was living in the house by the consent of the defendant.

Therefore, the plaintiff had no other right to the possession except such as she acquired under defendant's agreement. Furthermore, it will be seen that she was not a devisee under the will.

Now, it is true, as defendant argues, that the possession of the premises which will justify a decree of specific performance in the case of a verbal agreement, must be a possession referable to the contract. But it is well said in *Morrill* v. *Cooper* (65 Barb., 520), that where acquiescence in the possession has been for a considerable time, that circumstance must be taken into consideration. In that case the plaintiff had been allowed to remain in possession eleven months. Here she had been in possession three years. And this circumstance is a strong indication that her possession was under the parol agreement. Under what else could it have been? What has been her position since her husband's death? She has not been paying rent, but has, so far as appears, held the property absolutely as her own, claiming to own it and refusing the defendant possession even of a part of the house.

We have, also, the further fact, found by the learned justice, that in February, 1886, the defendant asked of plaintiff that she would permit him and his wife to move into part of the dwelling and that

she refused this, but offered to surrender the premises if he would pay her what the deceased had expended for improvement; and, again, that soon afterwards defendant offered plaintiff $500 if she would move out, which she declined. It was then that defendant gave the notice to quit. These two circumstances enforce the view that the plaintiff was in possession under no other authority than that of the verbal agreement. For the defendant then admitted her right and requested a favor.

It does not seem necessary to cite authorities to the point that where there is a parol agreement for the conveyance of land, and the purchaser has paid the full consideration and has taken possession under the parol agreement, equity will decree a specific performance. We need only refer to 3 Pomeroy's Equity (§ 1409) and to the cases cited in the note, where it is shown that open possession or permanent improvements, or the two combined, constitute sufficient parol performance. And one reason why possession is sufficient is, that it would be unjust to permit the legal owner to oust by ejectment the person who, under the agreement, is rightfully in possession. ♦*Kenyon* v. *Youlen*, 53 Hun, 591; *Coles* v. *Pilkington*, L. R., 19 Eq., 174.) The real question in the present case must be whether there was a valid consideration fully performed, and whether the possession was referable to the parol agreement. I think the court rightly decided these in the affirmative.

The defendant also urges that costs should not have been allowed. The complaint contained a claim that by an agreement between defendant and John A., defendant was to convey the premises to John A. The jury found in the negative. And the defendant, therefore, insists that neither side should have costs. It does not seem to us that this would be just. The two causes of action (if we chose to call them such) related to the same piece of property. It does not appear that the trial of the action was made more laborious by the addition of the claim just mentioned. The same witnesses generally testified. This case is quite unlike that of *Law* v. *McDonald* (9 Hun, 23). I think that the allowance of costs was in the discretion of the court, and was proper.

Judgment should be affirmed, with costs.

Judgment and order reversed, new trial granted, costs to abide event.