WILLIAM COOLEY, Appellant, *v.* ELMINA E. LOBDELL, as Administratrix, etc., of GIDEON LOBDELL, Deceased, Respondent.

*Verbal contract to convey real estate — void under the Statute of Frauds — part performance — Statute of Limitations — the owner of the fee may establish his right notwithstanding a tenancy by the curtesy.*

The fact of the payment of the consideration, in a case where its recovery in an action at law would fully indemnify the party paying it, is not a sufficient part performance of a verbal contract to sell real estate to take it out of the Statute of Frauds or to authorize equitable relief; a part performance, to have that effect, must be substantial, and is not sufficient unless it puts the party making the part performance in such a situation that it becomes a fraud upon him if the agreement be not fully performed.

It was verbally agreed between a wife and her husband that the wife should let the husband have certain money to enable him to build a house on a portion of his farm, and that when it was done the husband should deed to her the house

and sixty acres off the western part of the farm. Prior to 1876 the husband received the money, and in that year the new house was built, and in September of that year the husband and wife moved into the same. Stakes were set up indicating the division line between the sixty acres and the balance of the farm, the arrangement being that the husband was to pay off a mortgage upon the premises with the proceeds of the sale of the products of the farm, he remaining in the possession thereof. The husband stated that the house was built just as his wife wanted it, and the wife called the house hers. The wife made no improvements to the property, except to set out a rose bush and some pieplant roots, and various other roots for flower beds to ornament the yard.

The husband and wife occupied the house until April, 1880. In August, 1880, the husband wrote to his wife a letter signed by him, in which, among other things, he stated : "If you will come back I will surely do as I agreed to. I will give you a deed of the sixty acres of land." The wife died intestate in August, 1882, without having returned to the house. The sixty acres were never deeded to her. The husband died in January, 1892. Prior to his death he sold and conveyed the sixty acres in question. Three acres he sold in 1879, his wife joining in the deed, and the balance he sold in 1887 and 1888.

On November 9, 1893, an action was commenced by the sole heir at law of the wife against the administrator of the husband, to recover the amount received by the husband from such sales of the sixty acres. The defense was that a case for specific performance was not made out, and that the Statute of Limitations was a bar to the action.

*Held,* that there was no writing to take the case out of the Statute of Frauds, as the letter of August, 1880, was imperfect in that it did not express the consideration nor sufficiently describe the property;

That, if improvements are relied on to compel specific performance, they should be of a substantial and permanent nature, and that there was nothing done by the wife that could fairly be considered as improvements to the property;

That there was no possession in her, nor was she in control of the property;

That, upon the completion of the house in 1876, and the failure of the husband to perform the verbal contract to convey, if the wife had, at that time, a good ground upon which to maintain an action for the specific performance thereof, she should have brought her action, and that the present action, commenced in 1893, was barred by the Statute of Limitations;

That, although in some cases the value of the property or what it was sold for might be the measure of damages, the sale thereof does not itself give the cause of action.

The general rule is that when the Statute of Limitations has commenced to run in any case it will not be suspended by reason of any subsequent event which is not within the saving clauses of the statute, and a person cannot avail himself of a disability, unless it exists when his right of action accrues.

The existence of a possible tenancy by the curtesy, in the husband of an intestate, in the possession of real estate, will not prevent the sole heir at law of the intestate from establishing his right, if he has one, to such property, although it may affect the extent of his relief.

Appeal by the plaintiff, William Cooley, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Broome on the 20th day of February, 1894, upon the dismissal of the complaint directed by the court after a trial at the Broome Circuit before the court and a jury, and also from an order entered in said clerk's office on the 20th day of February, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

*A. D. Wales*, for the appellant.

*Carver, Deyo & Jenkins*, for the respondent.

Merwin, J. :

Olive Cooley, a daughter of the plaintiff, married Gideon Lobdell, defendant's intestate, in 1864. They had one child, who died in 1878. Lobdell, in 1871, became the owner of a farm of 160 acres, in the town of Conklin, in the county of Broome, and on the east side of it there was an old house. In 1874 Solomon Bunnell, the grandfather of Olive, died, and she was one of his heirs. From him before he died, or from his estate after he died, and prior to 1876, she received about the sum of $4,000. There is evidence tending to show that in the fall of 1874, or early in 1875, it was verbally agreed between Olive and her husband, that she would let him have her money to enable him to build a new house on the west side of the farm, and that when the house was done he would deed it to her, together with sixty acres, the western part of the farm. One witness testifies as follows : " While I was there on my visit Gideon said to me, ' Mother, I am going to tell you what I have been thinking of doing, or would like to do ; that is, divide the farm, run off sixty acres, and build a house on it, and move there, but I can't do it unless Olive will let me have the money to build the house with.' Olive says, ' He offered me his note if I would let him have the money, and I won't do it and take his note.' He hesitated a few minutes, and he said, ' I will tell you what I will do. I will give you a deed of the sixty acres when the house is done, if you will let me have the money to build the house with,' and she said, ' I will let you have the money if you will give me a deed when the house is done.' He said he would give her a deed of

the sixty acres of land when the house was done, if she would let him have her money to build the house with. She told him she would. The money spoken of was money she expected from her grandfather; it was after his death. In this talk I have just given it was said that he was to work the farm and have the proceeds, and he was to pay off the mortgage, to see that the mortgage upon it was paid off if he had the proceeds of the farm. In this conversation it was said the money she had let him have and would let him have, was four thousand dollars."

Prior to 1876 the husband received the money, and the new house was built in 1876, at an expense of about $2,600, and the parties moved into it in September, 1876. Stakes were set indicating the division line between the sixty acres and the balance of the farm. There is evidence that the husband stated that the house was built just as his wife wanted it, and that she called it hers. There is no proof that Mrs. Lobdell made any improvements, except she set out a rose bush and some pieplant roots, and various other roots for flower beds to ornament the yard. Mr. and Mrs. Lobdell lived in the house until April 1, 1880, when they moved to Binghamton, where they lived until the death of Mrs. Lobdell on August 27, 1882. The sixty acres were never deeded to her, though request was made as early at least as February, 1877, and he verbally promised to do it. In August, 1880, when Mrs. Lobdell was at her father's, her husband wrote to her a letter, signed by him, in which he says, among other things: "If you will come back I will surely do as I agreed to. I will give you a deed of the sixty acres of land."

Mrs. Lobdell died intestate, leaving the plaintiff as her sole heir at law. On the 31st of January, 1892, Mr. Lobdell died, and the defendant was afterwards duly appointed his administratrix. Prior to his death he sold and conveyed all of the sixty acres. Three acres he sold in 1879, his wife Olive joining in the deed, and the balance was sold in 1887 and 1888, the last being April 1, 1888. He received upon these sales about $4,500, and that is the amount the plaintiff seeks to recover here. This action was commenced November 9, 1893.

The defense is twofold: *First*, that a cause for specific performance was not made out; and, *second*, that the Statute of Limitations is a bar.

1. There was no writing to take the case out of the Statute of Frauds unless the letter of August, 1880, be such. That, however, was imperfect. It did not express the consideration nor was the property sufficiently described. (*Wright* v. *Weeks*, 25 N. Y. 161; *Rollin* v. *Pickett*, 2 Hill, 552; Waterman on Spec. Perf. § 236.)

Was there such a part performance of the verbal contract as to authorize equitable relief? The payment of the consideration was of itself not enough. (*Winchell* v. *Winchell*, 100 N. Y. 163; 1 Story's Eq. Juris. § 760.) In *Miller* v. *Ball* (64 N. Y. 292) it is said: " The payment of the consideration alone, in a case where its recovery in an action at law would fully indemnify the party paying, would not be a sufficient part performance within the rule under consideration, and neither would mere possession be, without any other circumstance of hardship or fraud. But payment of the consideration and possession under the agreement, or by the consent of the vendor, are facts which may be considered with other facts upon the question of part performance." The part performance must be substantial, and nothing will be considered as part performance which does not put the party into a situation which is a fraud upon him unless the agreement be fully performed. (*Wheeler* v. *Reynolds*, 66 N. Y. 231; 1 Story's Eq. Juris. § 761.) If improvements are relied on, they should be of a substantial and permanent nature. (Waterman on Spec. Perf. § 231; 1 Story's Eq. Juris. § 761, note 4; *Dana* v. *Wright*, 23 Hun, 32.) In Adams' Eq. (6th Am. ed.) 212, it is said that the principle of part performance does not apply " to any acts which do not alter the position of the parties. Such, for instance, as the taking of surveys, the preparation of conveyances, the payment of earnest, and even the payment of purchase money itself; for, although all these acts are in some sense a performance of the contract, yet their consequences may be set right by damages at law, and they do not place the parties in a position from which they can only be extricated by its completion." The taking possession and making improvements is said to be a necessary condition. (*Dunckel* v. *Dunckel*, 56 Hun, 29.)

In this case there was nothing done by the wife that could fairly be considered improvements as applicable to such a case. There was no possession, certainly none that would make her a trespasser if no contract. She was not in control of the property. By the

arrangement the husband was to pay off the mortgage with the proceeds of the farm, and so necessarily he was to remain in possession.

The case of *Smith* v. *Smith* (51 Hun, 164; affd., 125 N. Y. 224) is relied on by the plaintiff. In that case the husband, with the assent of his wife, with his own means built a block upon the land of the wife upon her verbal agreement that if he did so he should have a lien thereon for the amount, with a right to sell if necessary and recover back the advancement. This was in 1879, and the property was increased in value to the amount of the advance. The husband thereafter managed the property, using the rents and profits for the benefit of the family until 1887 when there was a disagreement, and the wife repudiated the agreement. It was held that the husband had a lien that equity would enforce, it being said that the wife incurred no individual liability by reason of the arrangement. The husband had no remedy unless he had a lien. In the present case the situation is different, especially in the fact that the wife upon the refusal of the husband to perform could have sued for the money advanced. There is no evidence to what extent the farm was benefited. Besides if the transaction be treated as a security for money advanced, the right of action on the death of the wife would go, not to the heir but to the personal representatives and so inure to the benefit of the surviving husband. (*Robins* v. *McClure*, 100 N. Y. 328, 336.)

The *Smith* case does not I think help the plaintiff, but his case must be determined by the rules ordinarily applicable to the specific performance of such agreements. For aught this case discloses, an action for the recovery of the money would have fully protected the wife, and no such fraud can be said to have existed as would furnish a basis for equitable action under well-settled principles applicable to such subjects.

2. The house was completed in the fall of 1876. Then upon failure of the husband to perform, if the wife had good ground for specific performance, she might have brought her action. (*Bruce* v. *Tilson*, 25 N. Y. 194; *McCotter* v. *Lawrence*, 4 Hun, 107.) The present action was not brought till November, 1893. The application of the ten-year Statute of Limitations is sought to be avoided upon the idea that plaintiff's right of action accrued upon the sale by the husband of the land. The last sale was on

April, 1, 1888. In some cases the value of the property, or what it was sold for, may be the measure of damages, but the sale does not give the cause of action. The plaintiff has no right except as he may establish a case for specific performance. As said in *Matthews* v. *Matthews* (133 N. Y. 679), the substituted damages founded upon the value of the property could not be awarded until it was determined that the plaintiff was entitled to a specific performance. "The law giving the purchaser an immediate action, it is no answer to the claim that the Statute of Limitations then commenced running, that the form of relief which he could then have had was not precisely the same as that now attainable." (*Peters* v. *Delaplaine*, 49 N. Y. 369.) A new cause of action cannot be created by a subsequent demand of specific performance. (*Bruce* v. *Tilson*, 25 N. Y. 194.) "If there are successive owners of the cause of action, or of equitable relief, and the right to prosecute arises in the time of the first, the period of limitation commences at that time, and continues attached to the demand during the several subsequent changes of both, and when the statute period has elapsed, the demand is barred, though the last proprietor had recently acquired his right." (DENIO, J., in *Bucklin* v. *Bucklin*, 1 Abb. Ct. App. Dec. 251.) This is not the case of moneys received by an agent from a third party within the rule laid down in *Nearing* v. *Brown* (10 N. Y. St. Repr. 637).

But it is urged that Gideon Lobdell was a tenant by the curtesy, and so the time from his wife's death to his own death should be excluded. It is not clear that any such right existed. If, as held in *Wheeler* v. *Reynolds* (66 N. Y. 227), the parol agreement was void in equity as in law, and the right of the court to give relief is founded, not on the agreement, but on the fraud, it is difficult to see how the wife had any seizin legal or equitable that would furnish a basis for curtesy. In *Harvey* v. *Brisbin* (143 N. Y. 152) the right of a tenant by the curtesy is said to be a legal right. Besides, the right to sue being in the wife, the running of the statute commenced before her death. "A person cannot avail himself of a disability unless it existed when his right of action or of entry accrued." (Code Civ. Proc. § 408.) The general rule is that when time has once commenced to run in any case it will not cease to do so by reason of any subsequent event which is not within the sav-

ing of the statute. (1 Wood Lim. [2d ed.] § 6.) The existence of a possible right of curtesy would not prevent the plaintiff establishing his right if he had one; it might affect the extent of his relief. A number of cases are cited with reference to the enforcement of debts of ancestors against heirs of devisees, but they do not seem to apply here.

The foregoing considerations lead to the conclusion that the defense in both aspects is made out and that the nonsuit was properly granted.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment and order affirmed, with costs.