KARL NATHAN, Respondent, *v.* THE EQUITABLE TRUST COMPANY OF NEW YORK, Defendant, Impleaded with SIDNEY S. PRINCE and Others, Copartners, Doing Business under the Name and Style of ASIEL & Co., Appellants.*

First Department, January 13, 1928.

Limitation of actions — suspension of period — action accrued prior to commencement of war between United States and Germany — plaintiff's assignors were citizens of Germany — Civil Practice Act, § 27, is limited by Civil Practice Act, § 28 — period of war cannot be deducted from statutory limitation.

The plaintiff's assignors were citizens of Germany when the cause of action stated in the complaint accrued, shortly before the war between the United States and Germany commenced. The period of the war cannot be deducted from the period of limitation, for, while section 27 of the Civil Practice Act provides

* Revg. 129 Misc. 464.

that where a person is disabled to sue in the courts of the State by reason of either party being an alien subject or citizen of a country at war with the United States, the time of the continuance of the disability is not a part of the time limited; that section is limited in its operation by section 28 of the Civil Practice Act which provides that a person cannot avail himself of a disability unless it existed when his right of action accrued. Since the right of action accrued to plaintiff's assignors before the commencement of the war, the period of the war cannot be deducted; furthermore, plaintiff could have commenced this action at any time within two years following the war.

A plea of hardship on the part of the plaintiff in case a contrary decision is given, has little weight, since a like plea may well be made by the defendant if the court should decide that the period of the war might be deducted.

FINCH and McAVOY, JJ., dissent, with opinion.

APPEAL by the defendants, Sidney S. Prince and others, from an order of the Supreme Court, entered in the office of the clerk of the county of New York on the 2d day of May, 1927.

*Jonas J. Shapiro* of counsel [*Edward S. Greenbaum* with him on the brief; *Greenbaum, Wolff & Ernst,* attorneys], for the appellants.

*David L. Sprung* of counsel [*Borris M. Komar* with him on the brief], for the respondent.

MARTIN, J. The complaint shows that the causes of action set forth therein accrued about a month before the war between the United States and Germany. The action was not commenced until the 17th day of January, 1927. Unless plaintiff may deduct from the computation of time the period of such war, the action is barred by the Statute of Limitations. (Civ. Prac. Act, § 48.) To that end plaintiff argues that section 28 of the Civil Practice Act does not apply where the " disability " is that referred to in section 27 of the Civil Practice Act which reads as follows:

" § 27. Effect of war on right of alien. Where a person is disabled to sue in the courts of the State by reason of either party being an alien subject or citizen of a country at war with the United States, the time of the continuance of the disability is not a part of the time limited for the commencement of the action."

Significantly, we find the very next section providing a limitation upon the period of disability. It must have been apparent to the codifiers that section 27 was limited by what immediately follows it:

" § 28. Disability must exist when right accrues. A person cannot avail himself of a disability unless it existed when his right of action or of entry accrued."

It is said that from a previous arrangement of the statutory limitations on actions it appears that the provisions of said section 28 do not apply where the disability is the one referred to in the present section 27. Reference is made to the Revised Statutes of

1830 (Pt. 3, chap. 4; 2 R. S. 291 *et seq.*) entitled " Of actions, and the times of commencing them."

This chapter 4 embraces two titles, the heading of the second reading " Of the time of commencing actions." This title is divided into six articles. In the 4th we find section 32, which excludes " the time of the continuance of  * * *  war," as well as section 41 which reads:

" § 41. No person shall avail himself of any disability enumerated in this Title, unless such disability existed at the time his right of action, or of entry, accrued."

Note the words " in this title."

Section 32, the predecessor of section 27 of the Civil Practice Act, is one of the sections of said title 2; and, therefore, the disability it recognizes is one " enumerated in this title," namely, title 2.

This is an unambiguous statutory statement that the disability incident to a state of war shall not be availed of by " an alien subject or citizen " (§ 32), " unless such disability existed at the time his right of action, or of entry, accrued." (§ 41.)

The effect is intensified by section 42, also found in said article 4, reading as follows:

" § 42. Where there shall be two or more such disabilities existing at the time the right of action or of entry accrued, .the limitations herein prescribed shall not attach, until all such disabilities be removed."

In section 42 the words " such disabilities " refer back to that part of section 41 reading " any disability enumerated in this title; " and the effect of section 42 is to make more imperative the conclusion that the disabilities referred to are those enumerated in title 2, the very thing that section 41 sets forth in the clearest language, " any disability enumerated in this title."

Furthermore, if we follow the plain meaning of the statutory provision, the result reached will be harmonious with the law on this subject which has always prevailed since the first adoption of statutory limitation on actions in England.

To avoid the plain effect of the statute and to justify a departure from the law established for several hundred years, reference is made to the heading of article 4 of said title 2, which article embraces sections 32, 41 and 42 just mentioned. This heading reads " General provisions concerning the commencement of suits, and the persons and cases excepted from the operation of the preceding articles of this title."

In the first place, this is a double heading. It includes (a) General provisions concerning the commencement of suits, and (b) persons

and cases excepted from the operation of the preceding articles, that is, articles 1st, 2d and 3d of title 2.

If there be occasion to harmonize the plain language of section 41, referring to any disability enumerated in title 2, with the heading of article 4, then section 41 may be regarded as one of the " general provisions " of said article 4. But, even were we to feel constrained to regard section 41 as coming within the second part of the super-scription of article 4, the effect of the heading would not be to negative the clear and wholly unambiguous statement of section 41 to the effect that it applies to any disability enumerated in title 2.

When we come to the Code of Procedure (§§ 103, 106), and later, to the Code of Civil Procedure (§§ 404, 408), the provisions we are discussing are found under the heading " General provisions as to the time of commencing actions " and finally reading simply " General provisions." If any inference is to be drawn, it is that the important part of the old heading was the first part, " General provisions; " the second part being dropped entirely.

In section 27 of the Civil Practice Act the word " disability " shows that the Legislature regarded an *enemy alien* as being under a " disability." In the absence of any unexceptionable explanation to the contrary, the Legislature must be presumed to have intended the only inference permissible from the present arrangement.

Section 28 is expressive of the general rule that, when the Statute of Limitations once begins to run, it continues to run, notwithstanding any subsequent disability. (See *Peck* v. *Randall*, 1 Johns. 165; *Cooley* v. *Lobdell*, 82 Hun, 98; *Bucklin* v. *Bucklin*, 1 Abb. Ct. App. Dec. 242, 251.)

Under the statute (21 Jac. 1, chap. 16) it was uniformly held that once the statute commenced to run, no subsequent disability could stop it; and as early as 1791 we find Lord Kenyon saying (*Doe* v. *Jones*, 4 T. R. 300, 310): " I confess I never heard it doubted till the discussion of this case, whether, when any of the Statutes of Limitations had begun to run, a subsequent disability would stop their running. If the disability would have such an operation on the construction of one of those statutes, it would also on the others. I am very clearly of opinion on the words of the Statute of Fines, on the uniform construction of all the Statutes of Limitations down to the present moment, and on the generally received opinion of the profession on the subject, that this question ought not now to be disturbed. It would be mischievous to refine, and to make nice distinctions between the cases of voluntary and involuntary disabilities; but in both cases when the disability is once removed, the time begins to run."

This has been referred to by the Court of Appeals as an authority

" of the highest standing." (*Scallon* v. *Manhattan R. Co.*, 185 N. Y. 359, 364.)    A very clear discussion of the rule will be found in *McDonald* v. *Hovey* (110 U. S. 619).

The English courts in considering a similar statute held that judges may not read into the statute exceptions which do not exist. Thus, in *Beckford* v. *Wade* (17 Ves. Jr. 87) Sir WILLIAM GRANT, M. R., answered negatively this query: " are we therefore to introduce into a Statute, conceived in general terms, all the exceptions, which   *   .*   *   the Statute should have contained   *   *   *? " saying further: " The proposition, that this construction, under the doctrine of inherent equity, is put upon our English Statutes of Limitation, is, as I apprehend, altogether unfounded.    General words in a Statute must receive a general construction; unless you can find in the Statute itself some ground for limiting and restraining their meaning by reasonable construction, and not by arbitrary addition or retrenchment."

A leading authority in this connection is *Bennett* v. *Worthington* (24 Ark. 487).    It disposes effectively of the proposition that judges should " interpret " Statutes of Limitation so as to give a remedy to a plaintiff where a war has prevented the enforcement of rights.

Chief Justice MARSHALL stated in *McIver* v. *Ragan* (2 Wheat. 25, 29, 30) that the courts could not insert in the Statute of Limitations an exception which the statute does not contain.    In the same case he said (at p. 29): " The Statute of Limitations is intended, not for the punishment of those who neglect to assert their rights by suit, but for the protection of those who have remained in possession under colour of a title believed to be good.   *   *   *

" Wherever the situation of a party was such as, in the opinion of the Legislature, to furnish a motive for excepting him from the operation of the law, the Legislature has made the exception.    It would be going far for this court to add to those exceptions.    It is admitted that the case of the plaintiffs is not within them, but it is contended to be within the same equity with those which have been taken out of the statute; as where the courts of a country are closed so that no suits can be instituted.   *   *   *   If this difficulty be produced by the legislative power, the same power might provide a remedy; but courts cannot, on that account, insert in the Statute of Limitations an exception which the statute does not contain.    It has never been determined that the impossibility of bringing a case to a successful issue, from causes of uncertain duration, though created by the Legislature, shall take such case out of the operation of the Act of Limitations unless the Legislature shall so declare its will."

In *McDonald* v. *Hovey* (*supra*) the American and English cases

with reference to Statutes of Limitation and the effect of disability were considered, and we find the following: " In view of these authorities and of the principles involved in them, and from a careful consideration of the language of the law itself, we are satisfied that it was not the intention of Congress, either in the 22d section of the act of 1789, or in the 2d section of the act of 1872, or in the 1008th section of the Revised Statutes, to change the rule which had always, from the time of Henry Seventh, been applied to Statutes of Limitation, namely, *the rule that no disability will postpone the operation of the statute unless it exists when the cause of action accrues; and that when the statute begins to run no subsequent disability will interrupt it.*"     (See, also, opinion on same point in United States District Court for Southern District of New York in case of *Aachen & Munich Fire Ins. Co.* v. *Guaranty Trust Co. of New York,* handed down September 19, 1927; also opinion in same case dated July 1, 1926.)

The plaintiff could have commenced this action before the war. Although a reason is now given for the failure to do so, no excuse is offered for not bringing this action during the two years following the war.

The complaint made by the plaintiff that a hardship will follow a decision that the Statute of Limitations applies to this action, overlooks the fact that at least as great hardship follows from the fact that a claim is permitted to remain for several years without any action and is then sought to be enforced against a citizen of this State at a time when its enforcement becomes very burdensome, if not unjust.

As to the assertion that there was a " partial payment," it is sufficient to refer to the brief for plaintiff, which shows that there has been neither a payment of interest nor such a part payment as would take the case out of the statute.   The payment was evidently intended to be a payment in full.   In any event it did not imply a further payment.   (See *Harper* v. *Fairley,* 53 N. Y. 442; *Van Keuren* v. *Parmelee,* 2 id. 523.)

The order should be reversed, with ten dollars costs and disbursements, and the motion granted, with ten dollars costs.

DOWLING, P. J., and MERRELL, J., concur; FINCH and McAVOY, JJ., dissent.

FINCH, J. (dissenting). . Whether section 28 of the Civil Practice Act modifies section 27 immediately preceding, so as to comprise a period when the country is at war, is the question involved in this appeal.   Section 27 provides that " Where a person is disabled to sue in the courts of the State by reason of either party being an

alien subject or citizen of a country at war with the United States, the time of the continuance of the disability is not a part of the time limited for the commencement of the action." Section 28 provides: "A person cannot avail himself of a disability unless it existed when his right of action or of entry accrued." This question was raised at Special Term by a motion under rule 107, subdivision 6, of the Rules of Civil Practice to dismiss the complaint upon the ground that the cause of action did not accrue within six years before the commencement of action. From an order denying the motion to dismiss the complaint this appeal is taken.

In the case at bar the plaintiff's right of action accrued about a month before the commencement of the war between the United States and Germany. The war between this country and Germany lasted from April 6, 1917, to July 2, 1921 (40 U. S. Stat. at Large, 1, chap. 1; 41 id. 1359, chap. 136; 42 id. 105, chap. 40) and as plaintiff's assignors were citizens of Germany, they were barred from bringing or prosecuting any action in our courts during that time. The authorities hold that section 28 of the Civil Practice Act comprises certain enumerated disabilities, such as infancy, insanity, imprisonment and coverture. Does it also comprise a suspension of the right to sue during the continuance of a state of war? To this *quære* the answer is a negative. Section 27 of the Civil Practice Act relates, as indicated in its headnote, not to a common-law disability but to the effect of war on the rights of an alien to bring an action in the courts of this country. Said section 27 is as foreign to a common-law disability as is section 24, relating to the effect of a stay of an action by injunction. In both cases there is a suspension of the right to sue. The disabilities concerned in section 28 are not those relating to war and an injunction, which are separately and expressly provided for, but are the disabilities well known to the common law, such as infancy, coverture, insanity and imprisonment. In none of these cases is the right to sue suspended for a moment, but because of these the Statute of Limitations is extended for various additional periods, depending upon whether or not the disability existed at the time the right of action or of entry accrued. Neither war nor the issuance of an injunction are strictly disabilities at all, as this term is used to express infancy, coverture, insanity and imprisonment, as shown both by examining the source of both sections 27 and 28 and also by a consideration of the result which would be arrived at by so holding. Taking up the source of such sections 27 and 28, we find that both sections are mediate re-enactments of provisions of the Revised Statutes (Pt. 3, chap. 4; 2 R. S. 291 *et seq.*), which took effect on January 1, 1830. (See 2 R. S. 778, § 8; Laws of 1828

[2d Meeting], chap. 20, §§ 3, 8.)   Articles 1st and 2d of title 2 of this act provide certain limitations of time for commencement of actions relating to real and personal property.   In both articles are exceptions from the operation of the statute in the case of certain enumerated disabilities, such as infancy, insanity, imprisonment and coverture.   Article 4th is entitled: " General provisions concerning the commencement of suits, and the persons and cases *excepted from the operation of the preceding articles of this title.*"   (Italics not in original.)   This heading, if there was nothing else, plainly shows that its provisions cover cases not covered in the preceding articles.   One of these cases is that of war.   Section 32 of article 4th (now Civ. Prac. Act, § 27) reads as follows: " Whenever any person shall be disabled to prosecute in the courts of this State, by reason of his being an alien subject or citizen, of any country at war with the United States, the time of the continuance of such war, shall not be deemed any part of the respective periods limited in the first and second articles of this title, for the making of any entry, or the commencement of any action."   Nor is this construction militated against by section 41 of said article, which follows. Said section 41 of said article 4th (now Civ. Prac. Act, § 28) reads: " No person shall avail himself of any disability enumerated in this Title, unless such disability existed at the time his right of action, or of entry, accrued."   It is to be noted that the latter section is by its express terms limited to certain disabilities enumerated in the title.   There are to be found in said title certain disabilities expressly set forth and each given a particular number. These enumerated disabilities do not include the case of a person prevented from prosecuting an action because of war.   Such a case, therefore, is not within the terms of section 41.   The fact that in the Civil Practice Act all sections dealing with limitations of actions are placed under the same article 2 does not change the above conclusion.   It is well settled that by such grouping or condensation, the constituent parts of the statute do not lose their previous construction, even though a different construction may be suggested by their new position.   As was said by Mr. Justice Bradley in *McDonald* v. *Hovey* (110 U. S. 619, 628): " It is a received canon of construction, acquiesced in by this court: ' That where English statutes, such, for instance, as the Statute of Frauds and the Statute of Limitations, have been adopted into our own legislation, the known and settled construction of those statutes by courts of law has been considered as silently incorporated into the acts, or has been received with all the weight of authority.' *Pennock* v. *Dialogue,* 2 Pet. 1, 18; Smith's Commentaries on Stat. and Const. Law, § 634; Sedgwick on Construction of Stat. and

Const. Law, 363." And again, quoting from *Matter of Murphy* (3 Zab. [27 N. J. Law], 180), Mr. Justice BRADLEY said: " Where two or more statutes, whose construction has been long settled, are consolidated into one, without any change of phraseology, the same construction ought to be put upon the consolidated act as was given to the original statutes. A different construction ought not to be adopted if thereby the policy of the act is subverted or its material provisions defeated."

Our own Court of Appeals has applied this rule of construction in passing upon the effect of the very sections of the Civil Practice Act here involved, arising, however, in the case of an enumerated disability. In *Scallon* v. *Manhattan R. Co.* (185 N. Y. 359, 366) Judge VANN said: " We think the provision as now found in the Code of Civil Procedure has the same effect, so far as supervening disability is concerned, as when it stood in the Code of Procedure or the Revised Statutes. While verbal changes have been made and the language simplified, the substance has not been changed." It thus appears that by the express provisions of the statute the running of the Statute of Limitations was suspended during the continuance of the war. We next take up the result reached.

If, by a confusion of things different under the same term of disabilities, we are led to hold that section 28 applies to both, we then reach a result where we have actually cut down the period of limitation in the case of war or an injunction to a single day if it should happen that the cause of action accrued one day before a state of war existed or an injunction was issued. In the case at bar, as pointed out by the learned justice at Special Term (*Nathan* v. *Equitable Trust Co.*, 129 Misc. 464), if the war had lasted for six years instead of four, the statutory period of limitation for the plaintiff's assignors would have been less than a month. We have reached the above conclusion without considering whether the language used in paragraph 11th of the complaint can fairly be said to allege a part payment. If this may be so construed, of course the statute would start running anew. (*First Nat. Bank of Utica* v. *Ballou*, 49 N. Y. 155.)

It follows that the order appealed from should be affirmed, with ten dollars costs and disbursements.

McAVOY, J., concurs.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.