JOHN H. HINDLEY, Respondent, *v.* MANHATTAN RAILWAY COMPANY et al., Appellants.

1. APPEAL — JUDGMENT BASED SOLELY UPON INCOMPETENT EVIDENCE WILL BE REVERSED NOTWITHSTANDING UNANIMOUS AFFIRMANCE. Where it appears, upon an appeal to the Court of Appeals from a judgment entered upon a decision of the Appellate Division unanimously affirming a judgment of the Supreme Court, entered upon a decision of the court at Special Term, that there is no evidence, except that held incompetent by the Court of Appeals, to justify the findings of fact made by the trial court, such evidence must be presumed to have controlled the result and its admission requires a reversal of the judgment.

2. ELEVATED RAILROADS — ACTION BY ABUTTING OWNER TO RECOVER DAMAGES FOR EASEMENTS APPROPRIATED BY THE RAILROAD COMPANY AND TO RESTRAIN FURTHER INTERFERENCE WITH SUCH EASEMENTS — DEFENSE OF PRESCRIPTIVE RIGHT — EVIDENCE — ERRONEOUS ADMISSION OF SETTLEMENTS WITH OTHER ABUTTING OWNERS. Where in an action, commenced in 1901, by an abutting owner on a New York city street against two elevated railway companies to recover damages from them, as the owners and operators of an elevated railroad in said street, for an unlawful interference with his easements of light, air and access, and also to restrain the defendants from further maintaining and operat-

ing said road, the defendants pleaded, as a defense, a prescriptive right to maintain their railroad, founded upon open, continuous and hostile occupation for a period of more than twenty years before the commencement of the action, it being alleged in the complaint and admitted in the answer that the elevated road was constructed in 1879 and that it has been continuously maintained and operated as a passenger railway ever since, by means of locomotives drawing trains of cars upon the elevated structure every day up and down in front of the premises of the plaintiff,— it is error to admit, against objection and exception, evidence of settlements made by the defendants with other owners, whether voluntary, or made after suit brought, or after the institution of proceedings to condemn, or after judgment rendered in any suit or proceeding, where none of such settlements related to the block on which the property of the plaintiff is situated, and there is no evidence as to the amount paid in any case, or as to the circumstances surrounding the transaction when the settlement was made, or to show that any property sought to be condemned or embraced in any settlement was ever owned by the plaintiff or his grantors, and neither he nor any predecessor was ever a tenant in common with any owner whose easements were condemned or paid for; since such evidence is incompetent because there is no privity between the plaintiff and any landowner with whom a settlement was made.

3. PRESUMPTION OF TITLE BY PRESCRIPTION — WHEN IT CANNOT BE REBUTTED BY EVIDENCE OF SETTLEMENTS WITH OTHER LANDOWNERS. A claim that such evidence is competent to show the character of the defendants' entry and the nature of their possession of the easements of plaintiff is not well founded. While the presumption of title by prescription, whether resting upon a lost deed or arising in any other way, is not conclusive and may be rebutted, it cannot be rebutted by proof of settlement with those who were never connected with the particular lot in question. An admission that no grant had been made by the plaintiff's neighbors would have no effect on the presumption of a grant from the plaintiff himself. Such settlements do not tend to show that the defendants made no hostile entry in front of the plaintiff's premises, or that they admitted his title to the easements in controversy; and a general admission by defendants that street easements taken by them were subject to individual ownership and that some were still so owned, does not admit that the easements appurtenant to the land of the plaintiff had not been abandoned by him or acquired by the defendants.

4. SAME — ERRONEOUS ADMISSION OF PETITIONS BY DEFENDANTS FOR THE REDUCTION OF FRANCHISE ASSESSMENTS, ON THE GROUND THAT THEY HAD PAID OUT AND WERE LIKELY TO PAY OUT LARGE SUMS FOR DAMAGES TO ABUTTING OWNERS. It is also error to admit as evidence, against the defense pleaded by the defendants and against their objection and exception, parts of two verified petitions, presented by one of the defendants to the state board of tax commissioners in 1900 and 1901 for the purpose of securing a cancellation or reduction of

assessments upon its special franchise, in which it was stated in substance that the franchise granted to the company by the legislature and the municipal authorities differs from those granted to street surface railroad companies, "in that it is subject to the obligation of making payment for damages to abutting owners;" that the company had paid out a designated amount for fee and rental damages in settling with the owners of about fifty per cent of the land abutting upon its line of railroad; that on the assumption that as favorable settlements would be made in the future as in the past, a designated amount more would be required "to obtain the unobstructed right to exercise its franchise," and that on this account the annual value of its special franchise was reduced by at least the sum of $820,000; since the plaintiff was not a party to the proceeding and neither he nor his property, nor the property of any particular person, was specified or necessarily included among those with whom, in the opinion of the petitioner, settlements would have to be made; and the statement made in the petitions is not competent as an admission that no prescriptive right in favor of the defendants had attached, or would attach, or that they held in subordination to the plaintiff, where there is no evidence that such an admission was intended and, if intended, no evidence that the officer making and verifying the petition had any express authority to make such admission; especially where, if prescription could ever protect the defendants, it was a protection at the date of the petitions, more than twenty years having elapsed since the elevated road was built, so that their right to the easements of the plaintiff was then a vested right of property, or no right at all; and if it was a vested right it could not be admitted away in a proceeding to which the plaintiff was not a party.

5. WHEN ELEVATED RAILROAD MAY ACQUIRE EASEMENTS OF ABUTTING OWNERS BY PRESCRIPTION.    Where it appears, in such action, that the defendants, acting under legislative and municipal grants giving them actual authority to erect, maintain and operate an elevated railroad, in the street upon which plaintiff was an abutting owner, and apparent authority to appropriate the easements of abutting owners to the extent that such a structure and the use thereof necessarily involve, entered such street and, without leave or license from the plaintiff, took open, hostile and absolute possession of his easements of light, air and access by building a huge and permanent structure of iron in the street in front of his premises, which has been openly, exclusively and continuously maintained and used by the company for the purposes of an elevated railroad for a period of more than twenty years, the company has acquired by prescription an absolute title to such easements, which constitutes a complete bar to the recovery and relief demanded by the plaintiff.    The fact that the defendants entered into possession in the mistaken belief that they owned the easements, under the grant from the city, does not make the entry any the less adverse; they appropriated the easements under color of title and claim of right, believing that they had acquired

22

such easements by a grant from the city, which purported to cover them; so that the entry was hostile and the possession of the defendants adverse to that of the plaintiff from the beginning and throughout the period of twenty years.

*Hindley* v. *Manhattan Ry. Co.,* 103 App. Div. 504, reversed.

(Argued April 23, 1906; decided June 12, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 19, 1905, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was commenced on the 22nd of July, 1901, by an abutting owner on the west side of Sixth avenue in the city of New York, to recover damages from the defendants, as the owners and operators of an elevated railroad in said avenue, for an unlawful interference with his easements of light, air and access, and also to restrain the defendants from further maintaining or operating said road. The complaint was in the usual form in such cases, and the answer also, except that the defendants pleaded, as a defense, a prescriptive right to maintain their railroad, founded upon open, continuous and hostile occupation for a period of more than twenty years before the commencement of the action. It was alleged in the complaint and admitted by the answer that the elevated road in question was constructed in 1879, and that it has been maintained ever since in the avenue in front of the plaintiff's premises; that it is in the nature of a long iron trestle, extending lengthwise through the street, built by erecting foundations of brick or stone embedded in the earth, with iron columns about twenty feet high resting thereon and supporting a frame of girders and cross-girders, upon which two sets of railroad tracks are laid, and that since the construction of the road it has been operated as a passenger railway by means of locomotives drawing trains of cars upon the elevated structure every day up and down in front of the premises of the plaintiff.

The trial court found the facts substantially as alleged in the complaint, and found, as a fact, that the defendants had

no prescriptive right to maintain or operate their road in Sixth avenue in front of the plaintiff's premises. The damages already accrued were assessed at the sum of $1,534.65 and judgment was directed therefor against the defendants. The damages to accrue from the permanent operation of the road were assessed at the sum of $3,000 and an injunction was awarded against further maintenance or operation unless the defendants should pay that amount to the plaintiff within forty days after notice of judgment. The Appellate Division unanimously affirmed the judgment entered accordingly and the defendants appealed to this court.

*Julien T. Davies, John F. Dillon, George W. Wicker-sham, De Lancey Nicoll, J. Osgood Nichols* and *Charles A. Gardiner* for appellants. The orginal entry of defendants upon plaintiff's property in 1879 was in hostility to plaintiff's predecessor in title, and under claim of right and color of title, and within the apparent and possible boundaries of the grant under which the entry was made. (*G. E. R. Co.* v. *Anderson,* 3 Abb. [N. C.] 434; *A. B. N. Co.* v. *El. R. R. Co.,* 129 N. Y. 262; *Lewis* v. *R. R. Co.,* 162 N. Y. 224; *Herzog* v. *N. Y. E. Ry. Co.,* 76 Hun, 486; *Matter of N. Y. D. Ry. Co.,* 107 N. Y. 51; *People* v. *O'Brien,* 111 N. Y. 38; *White* v. *M. Ry. Co.,* 139 N. Y. 19; *Harris* v. *Burdett,* 73 N. Y. 136; *Wright* v. *Hunter,* 40 N. Y. 412; *Sands* v. *Crooks,* 46 N. Y. 568.) The defendants have acquired a prescriptive title to so much of the easements appurtenant to plaintiff's lot as they have taken. (*Lewis* v. *N. Y. & H. R. R. Co.,* 162 N. Y. 223; *Galway* v. *M. E. R. Co.,* 128 N. Y. 132; Wood on Lim. [3d ed.] § 181; *Mitchell Case,* 134 N. Y. 14; *Fobes Case,* 121 N. Y. 517; *Ward Case,* 152 N. Y. 43; *White* v. *M. R. Co.,* 139 N. Y. 26; *People ex rel. N. Y. E. R. R. Co.* v. *Comrs. of Taxes,* 82 N. Y. 459.) The trial court erred in the admission of evidence of admissions alleged to have been made by defendants respecting the ownership of easements not appurtenant to plaintiff's property or connected with it by any privity of

title.  (*White* v. *M. R. Co.*, 139 N. Y. 19 ; *Jamieson* v. *K. C. E. R. R. Co.*, 147 N. Y. 322 ; *Stevens* v. *K. C. F. Ins. Co.*, 101 N. Y. 411 ; *Coster* v. *Mayor, etc.*, 43 N. Y. 399 ; *Smith* v. *City of Boston*, 7 Cush. 254 ; *Halloway* v. *Southmayd*, 139 N. Y. 390 ; *Matter of Grade Crossing Comrs.*, 166 N. Y. 69 ; *Fearing* v. *Irwin*, 55 N. Y. 486 ; *Wilson* v. *N. Y. C. & H. R. R. R. Co.*, 2 N. Y. Supp. 65 ; *K. C. F. I. Co.* v. *Stevens*, 101 N. Y. 417 ; *Hier* v. *N. Y., W. S. & B. R. R. Co.*, 109 N. Y. 659.)  No acknowledgment of superior title in the plaintiff, or disclaimer of adverse possession arises from defendants' petitions to the tax commissioners, and the trial court erred in admitting them in evidence.  (*A. B. N. Co.* v. *N. Y. E. R. R. Co.*, 129 N. Y. 268 ; *Sailor* v. *Herzog*, 2 Barr, 184 ; *Bradford* v. *Guthrie*, 4 Brewst. [Penn.] 361 ; *Sherman* v. *Kane*, 86 N. Y. 65 ; *Jackson* v. *Woodruff*, 1 Cow. 285 ; *La Frambois* v. *Jackson*, 8 Cow. 597 ; *Miller* v. *Garlock*, 8 Barb. 153 ; *Corning* v. *Gould*, 16 Wend. 531 ; *Haight* v. *Price*, 21 N. Y. 241 ; *Nicholls* v. *Wentworth*, 100 N. Y. 455.)

*Charles F. Brown, Charles M. Cannon* and *Wilfrid N. O'Neil* for respondent.  None of the exceptions taken by the defendants on the trial to the rulings of the court upon the admission of evidence require a reversal of the judgment. (*Burbank* v. *Fay*, 65 N. Y. 57 ; *Kearney Case*, 13 N. Y. Supp. 608 ; *Strobel* v. *K. S. Co.*, 164 N. Y. 303, 323 ; *Cary* v. *Hotailing*, 1 Hill, 315 ; *Hull* v. *Naylor*, 18 N. Y. 588 ; *Miller* v. *Barber*, 66 N. Y. 558 ; *Hennequin* v. *Naylor*, 24 N. Y. 139 ; *Viele* v. *Goss*, 49 Barb. 96 ; *Richards* v. *Millard*, 56 N. Y. 574 ; *McSorley* v. *Hughes*, 58 Hun, 360.)  The defendants failed to prove title by prescription to the plaintiff's easements.  To constitute a title by prescription it was essential that the defendants should have proven that they entered upon the plaintiff's property under a claim of title thereto, and that they had continued to possess the same under such claim uninterruptedly for a period of twenty years.  (*Lewis* v. *N. Y. & H. R. R. Co.*, 162 N. Y. 202 ;

*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *A. B. N. Co.*
v. *N. Y. El. R. R. Co.*, 129 N. Y. 265; *Ode* v. *M. Ry. Co.*,
56 Hun, 199; *Lahr* v. *M. E. R. R. Co.*, 104 N. Y. 268;
*Abendroth* v. *M. R. Co.*, 122 N. Y. 1; *Yesler* v. *Holmes*, 80
Pac. Rep. 851; *Mayor* v. *Mott*, 60 Hun, 423; *Bird* v. *N. J.
& N. Y. R. R. Co.*, 3 App. Div. 344; *Delancy* v. *Hawkins*,
23 App. Div. 8, 14; 163 N. Y. 587.) The defendants hav-
ing entered upon Sixth avenue under a license or permission
from the legislature of the state of New York and the munici-
pal authorities of the city of New York, their possession and
use of plaintiff's easements therein are subordinate to his title
thereto. (*St. Vincent O. A.* v. *City of Troy*, 76 N. Y. 108;
*White* v. *Man. Ry. Co.*, 139 N. Y. 19; *Wiseman* v. *Luck-
singer*, 84 N. Y. 31; *American Bank Note Case*, 27 J. &
S. 175; *Glover Case*, 19 J. & S. 1; *People ex rel. Wooster*
v. *Maher*, 141 N. Y. 330; *People* v. *Kerr*, 27 N. Y. 188;
*Milhau* v. *Sharp*, 27 N. Y. 611; *Lahr Case*, 104 N. Y. 289;
*Kane Case*, 125 N. Y. 164.)

*William W. Goodrich* and *Andrew J. Skinner* for James
R. Roosevelt et al., intervening. There was no error in the
admission of the evidence of settlements made by defendants
with other abutting owners and of condemnation proceedings
instituted by them to acquire the easements of other owners
along the line of Sixth avenue. (*People* v. *Murphy*, 135
N. Y. 450; *Turner* v. *City of Newburgh*, 109 N. Y. 301;
*Bergmann* v. *Jones*, 94 N. Y. 51; *Hunter* v. *M. R. Co.*, 141
N. Y. 281; *Strobel* v. *K. S. Co.*, 164 N. Y. 303; *Brice* v.
*Bauer*, 108 N. Y. 428; *Beatyville Coal Co.* v. *Haskins*, 44
S. W. Rep. 363; *Cummin* v. *Smith*, 2 S. & R. [Penn.] 440;
*Marshall* v. *Cliff*, 4 Camp. 133; *Holt* v. *Squire*, R. & M.
282; *Berryman* v. *Wise*, 4 T. R. 366.) If all the evidence of
condemnation proceedings and settlements was stricken from
the case, there would still remain sufficient affirmative evi-
dence to sustain the judgment, viz., the declarations as to
defendants' title to the easements in question contained in the
petitions of the Manhattan Railway Company to the franchise

tax commissioners, and the affidavit filed therewith. (*Reed* v. *McCord,* 160 N. Y. 330; *Nichols* v. *Allen,* 112 Mass. 23; *A. B. N. Co.* v. *El. R. R. Co.,* 129 N. Y. 252; *Church* v. *Burghardt,* 8 Pick. 327; *Burrell* v. *Burrell,* 11 Mass. 298; *Smith* v. *Burtis,* 9 Johns. 174; *Endus* v. *Sternberg,* 2 Abb. Ct. App. Dec. 31; *Pitts* v. *Wilder,* 1 N. Y. 525; *Hunter* v. *Trustees of Sandy Hill,* 6 Hill, 407; *Spaulding* v. *Hallenbeck,* 36 N. Y. 204; *Jackson* v. *Griswold,* 4 Johns. 230.)

*W. G. Peckham* for Columbia College et al., intervening.

VANN, J. As the facts found by the trial court support the conclusions of law, the rule of unanimous affirmance prevents us from reviewing any questions except those relating to the admission of evidence and to the effect of erroneous rulings made in that regard. Those questions as argued before us were as follows :

1st. Were settlements made by the defendants with other owners and proceedings to condemn other property competent evidence for the plaintiff with respect to his property ?

2nd. Were certain petitions presented by the defendants to the state board of tax commissioners in order to secure a reduction of the special franchise tax for the years 1900 and 1901 competent evidence in behalf of the plaintiff?

1. The first of these questions was raised by the admission, subject to objection and exception, of evidence as to all settlements ever made by the defendants, or either of them, with property owners on Sixth avenue from Carmine street to Fifty-ninth, whether with or without suit, or with or without proceedings in condemnation. These settlements, ranging over a period of twelve years, were nearly two hundred in number. A few were voluntary, but nearly all were made after suit brought or proceedings to condemn instituted, and many not until after judgment was rendered. There were numerous settlements in some localities, but few in others, and in others still none at all. Not one related to the block on which the property of the plaintiff is situated. There was

no evidence as to the amount paid in any case, or as to the circumstances surrounding the transaction when the settlement was made, or to show that any property sought to be condemned, or embraced in any settlement was ever owned by the plaintiff or his grantors. Neither he nor any predecessor was ever a tenant in common with any owner whose easements were condemned or paid for.

We think this evidence was incompetent, because there was no privity between the plaintiff and any landowner with whom a settlement was made. It was received to meet the defendants' claim of prescriptive right, but it had no bearing on that defense, for an adjustment with A does not tend to destroy the presumption of a grant from B. The easements appurtenant to A's lot are separate and distinct from those appurtenant to B's lot, and there can be no community of interest in the easements unless there is a like interest in the lots themselves. Such easements are not co-terminous with the street, but, in the absence of special circumstances, of which there was no proof in the case before us, are confined to that portion of the street which is directly in front of the property affected. We regard this proposition as so well settled that the citation of authorities is not required. The question in every case is whether the owner of the particular lot under consideration has actually released the easements appurtenant to that lot, or whether the presumption of a release arises from the lapse of time and the other facts upon which the doctrine of prescription is founded.

If a railroad company in occupation of a right of way through a tract of wild land owned by a dozen persons should settle with one in order to avoid ejectment, it would be no recognition of any right, real or supposed, of the others, and would not be competent evidence in an action brought by them. When there is no connection, except that of mere location, between the properties of owners settled with and those not settled with, there is no logical basis upon which to admit proof of settlement. Could evidence of settlements with two hundred abutting owners, who were strangers to the title of the plain-

tiff, be received in his behalf, unless evidence that the defendants had refused to settle with as many more in the same situation could be received in their behalf? Other collateral issues would arise, resembling those which we condemned in the *Jamieson* and *Witmark* cases, and the court would be left to try as many indirect issues as there were separate parcels of property. (*Jamieson* v. *Kings Co. Elevated Ry. Co.*, 147 N. Y. 322, 325; *Witmark* v. *N. Y. El. R. R. Co.*, 149 N. Y. 393, 398.)

The claim that the evidence was competent to show the character of the defendants' entry and the nature of their possession of the easements is not well founded, because prescription rests on the presumption of a lost deed and the right is measured by the extent of the open and notorious user, as to which no question arose in this case. While the presumption is not conclusive but may be rebutted, it cannot be rebutted by proof of settlement with those who never were connected with the particular lot of land in question. An admission that no grant had been made by the plaintiff's neighbors would have no effect on the presumption of a grant from the plaintiff himself. If he were one of those who consented in advance to the construction of the road, how would it benefit him to show that the defendants had settled with some abutting owners who had not consented? (*White* v. *Manhattan Ry. Co.*, 139 N. Y. 19.) His situation, however, if prescription has actually run against him, is the same as if he had in fact given his written consent and the writing were lost. Settlements with other parties who had no community of interest with him would be competent in neither of the cases supposed, and they were not competent in the case before us, because an admission of liability to one or to many strangers is not an admission of liability to the plaintiff. The defendant's title may have been perfect as against some owners but imperfect as against others, and hence a settlement with the latter would admit nothing with reference to the former. Moreover, if a suit was threatened or imminent, settlement may have been made, because an action would destroy

the prescription, not yet complete. Such settlements do not tend to show that the defendants made no hostile entry in front of the plaintiff's premises, or that they admitted his title to the easements in controversy. The general admission by the defendants that street easements taken by them were subject to individual ownership and that some were still so owned, did not admit that the easements appurtenant to the land of the plaintiff had not been abandoned by him or acquired by them. The acknowledgment of title in Tom and Dick is not an acknowledgment by implication of title in Harry, even if they all owned parcels of land on the same street, for that would imply that all titles on the street had the same history.

2. The second question was raised by the admission in evidence, subject to objection and exception, of portions of a petition in the name of the Manhattan Elevated Railway Company, signed and verified by its vice-president on the 9th of April, 1900, and presented to the state board of tax commissioners for the purpose of securing a cancellation or reduction of the assessment upon its special franchise for the year 1900; also portions of a like petition signed and verified by the same officer on the 15th of April, 1901, and presented to the same board for the same purpose with reference to the assessment for the following year.

These petitions stated in substance that the franchise granted to the company by the legislature and the municipal authorities differs from those granted to street surface railroad companies, "in that it is subject to the obligation of making payment for damages to abutting owners;" that the company had paid out about $12,500,000, of which about $8,000,000 was for fee and the balance for rental damages, in settling with the owners of about fifty per cent of the land abutting upon its line of railroad; that on the assumption that as favorable settlements would be made in the future as in the past, about $8,000,000 more would be required "to obtain the unobstructed right to exercise its franchise," and that on this account the annual value of its special franchise was reduced by at least the sum of $820,000.

These petitions assert in the aggregate what the individual settlements proved in particular instances.  Neither the plaintiff nor his property, nor the property of any particular person, was specified or necessarily included among those with whom the petitioner expected that settlements would have to be made.  The general and elastic terms used indicate an approximation or estimate and show that the petitioner did not intend to refer to the plaintiff or to any one in particular. The admission was in substance that "if things go on in the future as they have in the past in our opinion we shall have to pay $8,000,000 more."  The plaintiff was not a party to the petition and is not bound by it and the defendants are not bound by it to the extent of recognizing title in any one not necessarily referred to therein. · The company had been fighting these claims for twenty years and as time passed had bought its peace as necessity required.  Although it had already settled with many and thought it would have to settle with many more, it did not follow in view of its use of the word " about " that it thought it would have to settle with the plaintiff.

Neither petition was competent except as an admission of a material and relevant fact, as distinguished from the expression of an opinion.  What did the petitioner intend to admit ? Clearly not that it would have to settle with those who had consented in advance to the construction of the road, or with those who had sued and had been beaten on the merits, for it was under no obligation to them. · How, then, can it be held to have intended to admit that it would have to settle with any other class of persons to whom it was under no obligation, owing to protection by prescriptive right or by some other defense ?  There was no statement in either petition that the defendants had not claimed adversely to the plaintiff during the course of the statute, nor as to the percentage of property whose owners would have to be paid " about $8,000,000 more."  That percentage might be fifty, fifteen or any other, leaving the rest to be defeated by prescription. The petitioner in stating that " the claims of many abutting

owners * * * are still pending," included pending actions, as to which prescription was no defense. The same is true of certain cases affected by infancy, lunacy or other disability by which the prescriptive period may be extended. Many questions had arisen during the protracted litigation over the new subject of street easements, some of which had been decided in favor of the abutting owners and some against them. To a certain extent they were regarded as *sui generis*, owing to the peculiar situation, and authorities apparently applicable were held not to apply. The question of prescription as applied to the road of the defendants had not been decided and again old rules might be held not to apply to new conditions. Under these circumstances the defendants might well claim in their petition to the tax commissioners that they should not be charged with the value of an unobstructed franchise until all the questions still open had been passed upon by the courts.

The vice-president stated certain facts and it cannot be presumed that he was authorized to state anything but facts. His individual opinion could not bind the company for which he spoke. He stated that it had paid out about $12,500,000, of which about one-third was for rental damages and the remainder for permanent rights. This related to the past and was a fact, but when he came to speak of the future, he could not state facts but could only express his personal opinion. He then expressed the opinion, *arguendo*, based upon what the courts had held upon questions litigated in the past, and on what they might hold upon questions to be presented in the future, that about $8,000,000 more would have to be paid. This was not intended as an admission that no prescriptive right had attached or would attach, or that the defendants held in subordination to the plaintiff. Indeed, the vice-president had no power in making a petition to reduce the assessment, to give away the property of the company or to waive the rights of stockholders. He could not make an admission that would have this effect, without express authority, of which there was no evidence. Prescription, if operative at all in such

cases, had closed the title when the petitions were presented in 1900 and 1901, for it is alleged in the complaint that the elevated road was constructed in 1879, and that it has been in operation ever since, thus completing the prescriptive period. If prescription could ever protect the defendant, it was a protection at the date of the petitions, and, hence, its right to the easements of the plaintiff was then a vested right of property, or no right at all. If it was a vested right, how could the vice-president admit it away in a proceeding to which the plaintiff was not a party ? The proceeding was most informal and was not only *coram non judice*, but *res inter alios acta*. The petitions should receive a reasonable construction in view of the purpose for which and the circumstances under which they were made, and when thus construed they cannot be held to admit that the company intended to assert in advance that it had no defense, whether founded on prescription or on any other tenable ground, to a claim presented by any abutting owner with whom no settlement had been made.

So the contrast or comparison of elevated railroads with street surface roads as to the effect of their respective franchises was but the expression of an opinion upon a question of law. The granting of the franchise was a fact, but the effect thereof was a legal conclusion, which is not binding even when expressed in a formal pleading. No expression of opinion upon a question of law by an officer of a corporation in a petition addressed to tax commissioners to reduce taxation, can transfer eight million dollars' worth of property belonging to the company, or give a right of action against it to one or to many, who, without such expression of opinion, would have had none whatever. That is not the function of a petition, nor the effect of an opinion even if given, as that before us was not, by regular counsel employed by the corporation. The tenure of property, and street easements are property, is not so frail and uncertain as to be seriously affected if not destroyed by a general statement of a legal proposition. We think this evidence also was incompetent against the defendants.

3. The effect of the evidence remains to be considered and this requires the decision of a question, arising indirectly, which is one of the most important that has been before the court for years. While the admission of improper evidence ordinarily requires the reversal of a judgment, still when it is manifest that the evidence did no harm, because it could not have affected the result, the judgment is allowed to stand, even in an action at law, although the ruling was erroneous. All errors do not warrant a reversal, but only those which may have brought about a decision for one party, when otherwise it might have gone for the other. The evidence held incompetent was addressed to the question of title by prescription, but, if no reasonable view of all the evidence in the record would permit a conclusion favorable to the defendants on that issue, it is clear that the erroneous rulings did no harm and that the judgment should be affirmed. On the other hand, if we reach the conclusion that the principle of prescription applies to the defendants' railroad and that there was not enough competent evidence to sustain the judgment, then it is equally clear that the errors affected the result and that a reversal is required. (*Woods Motor Vehicle Co.* v. *Brady*, 181 N. Y. 145.) Aside from the incompetent evidence, we find none in the record to justify the finding that prescription did not exist. A reference to the opinion written by the court at Special Term shows that in its view this evidence was controlling, for the learned justice said : " In the case at bar it seems to me it is clearly shown that the defendants, both during the running of the first twenty years of their road and thereafter, have recognized the outstanding title or interest in the plaintiff as indicated by the admissions in their petitions to the board of tax commissioners ; by the proof that defendants before and after the operation of their road for twenty years on Sixth avenue made voluntary settlements with property owners along its route on said avenue ; by condemnation proceedings taken by the defendants both before and after the operation of its road for twenty years to acquire the easements of property owners on the said avenue. * * *."

We ·thus reach the question of prescription as applied to easements in possession of the defendants through the construction and operation of their railroad in Sixth avenue. We considered this· question in one case, but did not directly decide it, because there had been a material and substantial change in the use, and the right claimed thereafter was not identical with the original user, while neither had existed independently of the other for the period of twenty years. (*American Bank Note Co.* v. *N. Y. Elevated R. R. Co.*, 129 N. Y. 252.) Some points were decided in that case, however, that are incidentally involved in this, and the discussion of the question was so thorough that a detailed examination of the opinion will be useful.

The original entry there was by the West Side and Yonkers Railway Company, the predecessor in title of the New York Elevated Railroad Company, under an act of the legislature authorizing it to construct an experimental line of elevated railroad commencing at the southerly extremity of Greenwich street and extending northerly for half a mile. Said act required the company to "pay all damages which may result to private property or the owners thereof by reason of the construction of said road," and to give a bond to secure the payment thereof. The entry was under this grant, and, in considering the nature thereof, the court said : "It may be conceded that where the undisputed proof shows that the party asserting title entered upon the premises under a claim of title adverse to the true owner and retained an open, exclusive and hostile occupation for twenty years, to the knowledge and palpable injury of such owner while not incapable of vindicating his rights, and there are no other or contradictory facts, a presumption of title will arise and the courts should find in accordance therewith. * * * The entry was not under a general claim of right adverse to all others, but under a specific and definite legislative grant, beyond and outside of which nothing was separately claimed. Neither the company nor individuals along the line knew that this title was imperfect because there were incorporeal rights in the street

belonging not to the public but to the abutting owners, and yet
the property in fact existed and the company took it without
right, but it must be admitted under color of title and claim of
right, since the property taken was within the apparent and pos-
sible boundaries of the grant under which the entry was made,
and for a time was supposed by both parties to be in fact within
its actual and legal boundaries. We have described that entry
as a trespass, as an invasion of the rights of the adjoining
owners, and as an exclusive and injurious seizure of their
incorporeal rights in the street. The possession which fol-
lowed we have declared to be a continuous wrong, for which
all the time and every day damages accrued and should be
awarded. That such an entry may be adverse and sufficient
to initiate a possession which, at the end of twenty years,
would ripen into a title, would seem to be quite clear were it
not for the decision of the General Term that the entry was
in subordination to the rights of the abutters and so not
adverse to them."

After reviewing the authorities relied upon by the General
Term to sustain its conclusion in that regard and showing
that they did not apply, the court continued : " In the pres-
ent case and under the Statute of Limitations, an actual
adverse title is not necessary to an adverse possession. The
latter may be asserted and may exist without showing any
specific title at all. A general assertion of ownership will
suffice if there be color of title, however groundless in fact,
and in such a case the possession may be adverse and, there-
fore, not presumptively in subordination to the rights of the
true owner."

Referring to the claim that the charter under which the
company entered recognized the abutters' street rights through
the provision for compensation, it was said : " Indeed, mere
provisions for compensation in a charter have never been
regarded as making the entry upon private property neces-
sarily subordinate to the private right, and very numerous
cases could be cited in which the entry was deemed adverse
and such as could ripen into a prescriptive title, although

made under an authority which provided for compensation. (*Baldwin* v. *Calkins*, 10 Wend. 169; *Lehigh Val. R. R. Co.* v. *McFarlan*, 43 N. J. 905; *Gulway* v. *Met. El. Ry. Co.*, 128 N. Y. 132.)"

Later on in the history of that road the iron columns were removed from the curb line and placed in the sidewalk nearer to the abutter's premises, thus relocating the entire structure. Steam dummies were substituted for cable as the motive power and other changes made, which the court deemed so material as to make the new user essentially different from the old. It held that a grant, the presumption of which is the origin of prescription, of the right to the old use would not prevent an injunction to restrain the new or to recover damages therefor; that neither had run for twenty years, and that the only possession for that length of time "was of an unseparated and inseparable fragment of the two essentially different uses." Of course, unless the court considered the possession adverse, it was quite immaterial whether it was continuous or not.

Under these circumstances it was held that the exception to the refusal of the trial court to find as a fact that there was no prescriptive right did not raise reversible error, but it is quite apparent what the decision of the court would have been had the present case been before it.

The subject of prescription as applied to an elevated railroad in Park, formerly known as Fourth avenue, was considered by us in *Lewis* v. *N. Y. & Harlem R. R. Co.* (162 N. Y. 202, 223). In that case the railroad company was authorized by the legislature and the city council to construct a railroad in Fourth avenue, and although it subsequently received a deed from the original owner of certain reserved rights, the entry and occupation for the prescriptive period was under the legislative and municipal grant. After deciding that the company had acquired no right by adverse possession, as against the city, we held that it had acquired certain rights by prescription as against the abutting owners. There was no claim of title to street easements, except by the act of con-

structing an elevated railroad in the public street. That act alone constituted the entry and the maintenance of the viaduct, with the operation of trains thereon, constituted the possession, which we held in twenty years ripened into a prescriptive right.

In deciding the question we said: "Prescription rests upon the presumption of a lost deed, after adverse use and enjoyment for twenty years, which has been adopted by the courts as the prescriptive period from analogy to the Statute of Limitations. The possession of the defendants was not subordinate to the plaintiff's title nor permissive as to her, but openly hostile and necessarily known to be such, to her and her grantors, who made no objection until 1897. It was exclusive, definite and uninterrupted, for it absolutely excluded all from the part of the avenue occupied by the railroad structures. The obstruction was not out of view or knowledge, but in plain sight of the abutting owners, who, by making no objection, acquiesced in the situation. The question does not arise between the railroads and the city, which had consented in advance to the occupation, but between the railroads and the abutting owners, who had not so consented. Under these circumstances the old structures had stood in the street so long that the railroads acquired a prescriptive right to have them stand there forever, so far as the plaintiff is concerned. The situation was the same in effect as if one of her grantors, while he owned her property, had conveyed to the defendants the right to permanently keep the stone viaduct where it stood and to use it indefinitely for railroad purposes. To the extent of the user by the companies the plaintiff, through the acquiescence of herself and her grantors, had parted with her rights when the present (third) structure was erected. She could claim no damages on account of the old structure, so long as it stood there. She could claim no damages on account of any new structure erected in the same place, within the same lines and for the same purpose, which inflicted no more injury upon her property than the old. She could raise no question except such as she could have raised

23

had she given a deed expressly assenting to the erection of the old structure. (Citing *Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474.) Had the new structure been no higher than the old in front of her property, none of her rights would have been invaded, and she would have been entitled to no relief."

We held further that prescription was initiated by entry pursuant to the legislative and municipal grants, under circumstances closely resembling those in this action. While we adjudged the company liable for such damages as the easements suffered from the increased height of the third structure, we decided that it had acquired by prescription the right to maintain the old structure forever, and limited the recovery to the effect of the additional encroachment and injury.

The principles upon which that case is founded apply with equal force to this. In both the entry was under legislative and municipal authority. In neither was there any verbal or written proclamation of hostility to the abutting owners. The same ignorance of the parties as to their actual rights existed in both cases. In each the easements were appropriated by the erection of a solid and permanent structure of such huge size as necessarily to be observed by all. For more than twenty years the structure in each stood, proclaiming the open and exclusive possession by the railroads of the easements formerly belonging to the abutting owners.

Notwithstanding these decisions, the foregoing quotations from which form our main argument upon the question of prescription, the plaintiff insists that the defendants entered and occupied without color of title and not adversely, but in recognition of the title of the abutting owners. Was there no color of title, or in other words was there no grant from any source, which according to its terms regardless of its legal effect, authorized the defendants to do all that they have ever done in Sixth avenue? Color of title does not depend on the validity or the effect of the grant, but wholly upon its intent and meaning. What did the grants in question purport to do? Upon their face they gave the defend-

ants authority to erect, maintain and operate an elevated railroad in the street and this is all they have ever done therein. These grants were apparent authority to appropriate the easements of the abutting owners to the extent that such a structure and the use thereof necessarily involved. The authority, although apparent only, for of course the city had no power to transfer private property, was sufficient for the claim of prescriptive right to rest upon. There may be color of title even if the grantor had nothing to convey. (*Jackson* v. *Smith*, 13 Johns. 406; *Northrop* v. *Wright*, 7 Hill, 476.) The intent and meaning of the grant must be gathered from what it says and the want of power to transfer the easements does not change its purport or the intent with which it was made. The grant purported to cover what the company entered upon and took possession of in 1879 and continued in undisputed possession thereof, so far as the plaintiff is concerned, until the commencement of this action in 1901. The abutting rights came within the boundaries of the grant, and if the city had owned the easements they would have passed to the railroad companies by virtue thereof. (*Herzog* v. *N. Y. Elevated R. R. Co.*, 76 Hun, 486; affirmed on opinion below, 151 N. Y. 665.) There was color of title, because there was that which in appearance was title, although in reality it was not.

Was the entry adverse? Without leave or license from the plaintiff the defendants took physical possession of his property at the outset, and from that day to this have never let go. The seizure was by building a huge structure of iron in the street, which we have held to be permanent, and have frequently awarded damages on that basis. The defendants grasped the easements of the plaintiff as by an iron hand and never loosened their hold. They did it under color of title measured by the grant and under claim of title measured by the user. If one without consent, either direct or indirect, projects his building over upon his neighbor's lot, under color of title, however dim, it is necessarily a hostile entry, as the act speaks for itself and is a public proclamation of hostility

to the title of the real owner. Possession thus taken is no more open, hostile or relentless than that of the defendants has been for twenty years. Absolute and exclusive, as far as it went at all, it said in substance in the name of the defendants, "We have taken these easements claiming them under our grant and purpose to keep them for all time to come."

As was said by the Court of Errors many years ago, "It is not necessary, to constitute an adverse possession, that it should have commenced under an effectual deed. If the possessor claims under written evidence of title, and on producing that evidence it proves to be defective, the character of his possession as adverse, is not affected by the defects of his title. If the entry is under color of title, the possession will be adverse, however groundless the supposed title may be. The fact of possession and its character, or the *quo animo* of the possessor, are the test. * * * The actual possession and improvement of the premises, as owners are accustomed to possess and improve their estate, without any payment of rent, or recognition of a title in another, or disavowal of title in himself, will, in the absence of all other evidence, be sufficient to raise a presumption of his entry and holding as absolute owner and unless rebutted by other evidence, will establish the fact of a claim of title." (*La Frombois* v. *Jackson*, 8 Cow. 589, 596, 603.) So in *Barnes* v. *Light* (116 N. Y. 34, 39) we said: "The defendant, however, contends that it does not appear that the plaintiff or his grantors ever claimed this strip of land, or any part of it. There is no evidence that any claim of title was made by word of mouth, but it appears that each grantee in taking possession of the farm, under his deed, entered upon, actually occupied and improved the land in controversy, or a part of it, although it was not included in his conveyance. * * * A claim of title may be made by acts alone, quite as effectively as by the most emphatic assertions."

The railroads recognized no title except the one they claimed to have acquired themselves and within the boundaries of which the property taken purported to come. (*White* v. *Man-*

*hattan Ry. Co.*, 139 N. Y. 19, 27.) The plaintiff in his complaint alleges that the entry was without his consent and that the construction and operation of the road was a daily trespass. A trespasser's possession is necessarily adverse and the entry without the consent of the plaintiff implies that it was against his will. Entry without consent and under color of title is presumed to be hostile when physical possession is taken and continuously maintained openly and exclusively. Ignorance of the disseizor as to who the real owner is does not make the entry any the less adverse and has no effect upon prescriptive right when possession is taken and maintained against all the world. The persistent fight of the companies, unprecedented in the history of the court as disclosed by our records, shows their determined refusal to recognize the rights of abutters and confirms the claim that their possession was hostile to the end.

The daily trespass was but a continuation of the original taking of possession and did not prolong the prescriptive period, as the action was not commenced until the twenty years had run and the bar was complete. Were the rule otherwise there could be no title by prescription, for continuity of possession during the period required is essential to the right. If possession on the last day of the twenty years extended the right to sue no lapse of time would be effective and all the learning in the books upon the subject would go for naught.

The defendants, it is true, entered into possession in the mistaken belief that they owned the easements, but they were trespassers notwithstanding and their action was adverse, for the property existed and they took it under color of title. Until the decision of the *Story* case in October, 1882, it was generally believed that the easements belonged to the city and passed under the grants. (*Story* v. *N. Y. Elevated R. R. Co.*, 90 N. Y. 122.) That case, however, did not make the law, but simply announced it and because the city did not own what until then it was supposed to own, did not change the intent of the grant or of the act of taking possession. In most cases of

adverse possession the disseizor goes in under a mistake, not as a mere intruder or squatter, but in the belief that he has the right to enter. That does not make the entry under color of title and claim of right any the less adverse. Here the abutters did not own the streets, but owned certain street rights. The defendants appropriated those rights believing that they had acquired them by a grant from the city, which purported to cover them. This was a hostile entry and the possession was adverse throughout.

We think that both upon principle and authority the doctrine of prescription applies to the defendants' railroad. The case of the *American Bank Note Company* is suggestive and the *Lewis* case is controlling. While the authority of that case was temporarily weakened somewhat upon a point not now material by our later decision in *Fries* v. *N. Y. & Harlem R. R. Co.* (169 N. Y. 270), it was fully restored even as to that point by the Supreme Court of the United States in several decisions. (*Muhlker* v. *N. Y. & Harlem R. R. Co.*, 197 U. S. 544, 569; *Birrell* v. *N. Y. & Harlem R. R. Co.*, 198 U. S. 390.)

Our conclusion is that the evidence objected to was incompetent; that the principle of prescription should be applied to the railroad of the defendants; that there was no evidence except that held incompetent to justify the finding of fact that no prescriptive right existed and that, hence, said evidence is presumed to have controlled the result and its admission requires a reversal.

The judgment should be reversed and a new trial ordered, with costs to abide the final award of costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.