FRANCIS M. SCALLON et al., Respondents, *v.* THE MANHATTAN RAILWAY COMPANY et al., Appellants.

1. ELEVATED RAILROADS — TITLE BY PRESCRIPTION — WHEN INFANCY WILL NOT PREVENT RUNNING OF STATUTE OF LIMITATIONS AGAINST CAUSE OF ACTION FOR DAMAGES FOR APPROPRIATION OF EASEMENTS. Adverse possession and prescription being closely related, the former regulated by statute and the latter by common law, the effect of infancy upon title by prescription is analogous to that upon title by adverse possession under the Statute of Limitations. If infancy exists when a cause of action first accrues, the time for commencing the action is extended for a certain period after the infant becomes of age. If, on the other hand, the statute has begun to run against the ancestor, it is not interrupted by his death and the supervening disability of his infant heirs; so that an adverse possession commencing in the lifetime of the ancestor will continue to run against the heir, although he is an infant, when his right accrues.

2. RULE THAT A DISABILITY ARISING FROM INFANCY IS NOT AVAILABLE UNLESS IT EXISTED WHEN THE CAUSE OF ACTION ACCRUED, IS UNCHANGED BY THE STATUTE (CODE CIV. PRO. § 375). The rule that no person can avail himself of a disability arising from his infancy unless it existed when his right of action or right of entry accrued was not changed by section 375 of the Code of Civil Procedure (L. 1876, ch. 448, § 375), which provides that "If a person, who might maintain an action to recover real property, or the possession thereof, or make an entry, * * * founded on the title to real property, * * * is when his title first descends, or his cause of action or right of entry first accrues, either: within the age of twenty-one years * * * the time of such a disability is not a part of the time, limited in this title, for commencing the action, or making the entry, * * *" The word "first," used in the phrase "when his title first descends, or his cause of action or right of entry first accrues," runs through all the legislation on the subject, and is the controlling feature thereof. The words "cause of action" are associated with the words "right of entry," and it is when either "first accrues," or the title, not the cause of action, "first descends," that the disability, in order to be effective, must exist; and where a cause of action, or a right of entry, which has accrued during the lifetime of an ancestor, passes upon his death to his infant heirs, the running of the Statute of Limitations, or of the statutory period for the acquisition of a prescriptive title, is not interrupted by his death and the supervening disability of his infant heirs.

3. SAME — RUNNING OF STATUTORY PERIOD OF PRESCRIPTION NOT INTERRUPTED BY INFANCY OF PLAINTIFFS. Where an elevated railroad company, by the erection of a huge and permanent structure of iron for

the purposes of an elevated railroad, appropriated the easements of light, air and access appurtenant to land abutting on the street in which such obstruction was constructed, a cause of action, in favor of the abutting owner and against the company, accrued upon the completion of the elevated structure and the appropriation of the easements thereby, so that the period limited by the statute for the acquisition of a prescriptive title to such easements began to run from that time; and where such abutting owner died, eight years afterward, leaving infant children, who did not become of age until twelve years later, and who, more than twenty years after the completion of the elevated railroad, brought an action to recover damages for such interference with the easements and also to restrain the company from further maintaining and operating the railroad, the supervening disability of the plaintiffs, by reason of their infancy, cannot operate to defeat the defendants' claim to title by prescription, since there was but one cause of action, and that did not first accrue upon the death of such owner, but it had accrued eight years before she died, and belonged to her in her lifetime so that, upon her death it passed, with the land, to the children.

*Scallon* v. *Manhattan Ry. Co.*, 112 App. Div. 262, reversed.

(Argued April 23, 1906; decided June 12, 1906.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 11, 1906, affirming a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Julien T. Davies, John F. Dillon, George W. Wickersham, De Lancey Nicoll, J. Osgood Nicholls* and *Charles A. Gardiner* for appellants. The defendants have acquired a prescriptive title to so much of the easements appurtenant to plaintiffs' lot as has been subject to their adverse user during the prescriptive period. (*A. B. N. Co.* v. *N. Y. E. R. R. Co.*, 129 N. Y. 254.) The period limited by the statute for the acquisition of a prescriptive title to the easements appurtenant to the property in suit by reason of an adverse possession thereof cannot be extended by the supervening infancy of the plaintiffs Francis Scallon and Annie Scallon. (*Becker* v. *Van Valkenburg*, 29 Barb. 319; *Demarest* v. *Wynkoop*, 3 Johns. Ch. 138; *Jackson* v. *Wheat*, 18 Johns. 45; *Fleming*

v. *Griswold*, 3 Hill, 85 ; 19 Am. & Eng. Ency. of Law, 224 ; *McDonald* v. *Hovey*, 110 U. S. 619 ; *Hogan* v. *Kurtz*, 94 U. S. 773 ; *Jackson* v. *Schoonmaker*, 4 Johns. 401 ; *Jackson* v. *Johnson*, 5 Cow. 74 ; *Bradstreet* v. *Clarke*, 12 Wend. 602 ; *Mercer* v. *Selden*, 1 How. 37.)

*Edward S. Hatch* and *Vincent P. Donihee* for respondents. No prescriptive title to easements can be acquired against an owner legally incapable of acquiescing, or where the circumstances negative acquiescence. (*Parker* v. *Foote*, 19 Wend. 309.) Acquiescence is negatived where the person against whom the right is claimed could not have prevented the exercise of the subject of the supposed grant. (*Webb* v. *Bird*, 13 C. B. [N. S.] 841.) The presumption of a grant, upon which alone title by prescription is founded, cannot be indulged against an infant. (*Parker* v. *Foote*, 19 Wend. 309 ; *Lamb* v. *Crosland*, 4 Rich. [S. C.] 536.) The effect of supervening infancy under section 375 of the Code of Civil Procedure is to suspend the running of the statute. (*Meiggs* v. *Hoagland*, 68 App. Div. 182 ; *A. B. N. Co.* v. *N. Y. E. R. R. Co.*, 129 N. Y. 252.)

Vann, J. The appeal in this action was argued at the same time with that in the *Hindley* case against the same defendants. (*Hindley* v. *Manhattan Ry. Co.*, 185 N. Y. 335.) As the facts relating to the cause of action are substantially alike in both cases, our decision in that case must control this, unless the disability of the plaintiffs for a time on account of their infancy, a feature which exists in this case only, requires a different conclusion.

The entry by the defendants was in 1879, and this action was commenced in 1902. The trial court found that the plaintiffs derived title from their mother, Mary A. Scallon, who purchased the abutting property at a foreclosure sale in 1879. Mrs. Scallon died intestate in 1888, seized in fee of said property, leaving the plaintiffs, one aged eleven and the other nine, as her only heirs at law. The elder daughter

became of age on the 10th of January, 1898, and the younger on the 5th of December, 1900.

The question not common to both cases is whether the supervening disability of the plaintiffs operated to defeat the defendants' claim to title by prescription.

The Appellate Division did not consider this question and Mr. Justice HOUGHTON, one of the concurring judges, in stating the reason, made some observations so pertinent to the questions involved in both cases that we quote them in full, as follows: "But for this former decision (referring to the *Hindley* case as decided by the Appellate Division), however, I should be of the opinion that the defendant could and had obtained prescriptive rights against abutting owners, and that its occupation of the streets became hostile before the decision of the courts in 1882, adjudging that the rights of abutting owners had been invaded, and that the purchase or recognition of the rights of one abutting owner on the route, did not destroy defendants' prescriptive rights against other abutters whose claims were not conceded. Although the defendant began its occupancy under grant from the state to the street only, yet from its manner of occupation, and from its resistance to payment for invasion of the individual rights of abutting owners, it must be deemed, I think, to have occupied under claim of right to use all that was necessary to the erection, maintenance and operation of its railroad. From the very nature of the structure, and from the necessary manner of operation, the light, air and access of abutting owners was appropriated. That the defendant believed it had the right to these under its grant from the State, or that it insisted that abutting owners had no redress for their invasion, did not change its rights or the character of its occupation. That occupation was open, notorious and exclusive, either under claim of title or in hostility to the owner's rights, and contained all the elements, it seems to me, necessary for the ripening of prescriptive title. While the right of way is continuous, and in a broad sense must be treated as a whole, yet the invasion of individual rights is single; and I see no

reason why such single right cannot be obtained by adverse possession, notwithstanding the rights of other abutters similarly situated may be recognized. The question in the present case as to whether or not the Statute of Limitations was suspended by the death of the owner and the descent of the real property to her infant heirs, would be important if defendant could obtain title by prescription, but under the decision as rendered it becomes immaterial."

Returning to the question as to the effect of supervening disability, it is urged in behalf of the plaintiffs that the presumption of a grant, upon which title by prescription is founded, cannot be indulged against an infant and that the running of the Statute of Limitations is suspended during the period of infancy. (Code Civ. Pro. § 375.)

Adverse possession and prescription are closely related. The one is regulated by statute and the other by common law, which has adopted twenty years as the prescriptive period from analogy to the Statute of Limitations. (Code Civ. Pro. §§ 369–371; *Lewis* v. *N. Y. & Harlem R. R. Co.*, 162 N. Y. 202, 223.) Adverse possession is the open and hostile possession of land under claim of title to the exclusion of the true owner, which, if continued for twenty years, ripens into an actual title. (*Baker* v. *Oakwood*, 123 N. Y. 16.) Prescription rests upon the presumption of a grant of incorporeal rights that has become lost and after the lapse of twenty years the presumption ripens into a title also. It is measured by user and the adverse use must commence in the same way, continue for the same period and be of the same character as the adverse possession required to give title to real estate. (*Lewis Case, supra*, p. 224.) The close connection between the two methods of acquiring property makes it reasonable and natural to extend the analogy to the subject of disability. There is no reason for affording greater protection to incorporeal rights than to the land to which those rights are appurtenant.

The effect of infancy upon statutes of limitation is not uniform but depends upon circumstances. If infancy exists

when the cause of action first accrues, the time for commencing the action is extended for a certain period after the infant becomes of age. If, on the other hand, the statute has already begun to run against the ancestor, it is not interrupted by his death and the supervening disability of his infant heirs. An adverse possession commencing in the lifetime of the ancestor will continue to run against the heir, although he is an infant when his right accrues. This rule is well established by authorities of the highest standing. (*Fleming* v. *Griswold*, 3 Hill, 85; *Becker* v. *Van Valkenburgh*, 29 Barb. 319, 324; *Bradstreet* v. *Clarke*, 12 Wend. 602, 619; *Demarest* v. *Wynkoop*, 3 J. Ch. 129, 138; *Jackson* v. *Wheat*, 18 Johns. 40, 41; *Jackson* v. *Johnson*, 5 Cow. 74, 93; *Hogan* v. *Kurtz*, 94 U. S. 773, 779; *McDonald* v. *Hovey*, 110 U. S. 619; *Stowel* v. *Zouch*, Plowd. 353a; *Doe* v. *Jones*, 4 T. R. 300; *Doe* v. *Jesson*, 6 East, 80; Tyler's Ejectment and Adverse Possession, 929, 930; 19 Am. & Eng. Ency. [2nd ed.] 222; Buswell's Limitations and Adverse Possession, 175; Wood on Limitations, § 6; Angell on Limitations, § 196.)

If this rule applies to the case before us, the intervening infancy of the plaintiffs would not extend the period of limitation, which had run for about eight years at the time of the death of their mother, who was not shown to have been under any disability in her lifetime. The rule, as stated by us, prevailed at least until the enactment of section 375 of the Code of Civil Procedure in its present form, but it is claimed that by the amendment of that section in 1876 the rule was changed. (L. 1876, ch. 248, § 375.) That section, so far as material, reads as follows: " If a person, who might maintain an action to recover real property, or the possession thereof, or make an entry, or interpose a defense or counterclaim, founded on the title to real property, or to rents or services out of the same, is when his title first descends, or his cause of action or right of entry first accrues, either: within the age of twenty-one years   *   *   *   the time of such a disability is not a part of the time, limited in this title, for commencing the action, or making the entry, or interposing the defense or

counterclaim; except that the time so limited cannot be extended more than ten years, after the disability ceases, or after the death of the person so disabled." (Code Civ. Pro. § 375.)

It is contended that the phrase " when his title first descends, or his cause of action or right of entry first accrues," refers to the plaintiffs only and not to their ancestor, although both ancestor and heir were previously regarded ʼas one person under the statute.

A reference to the origin and history of the provision· upon the subject becomes important to see whether there has been any substantial change in legislation since the cases cited were decided.

The first pertinent enactment that we find in this state is the following: " If any person or persons who is or shall be entitled to such writ or writs of formedon or *scire facias*, or who hath or shall have such right or title of entry, be, or shall be, at the time the said right or title first descended, accrued, come or fallen, within the age of one and twenty years," the time is extended. (L. 1788, ch. 43, 2 Laws of N. Y. 1785 to 1788, pp. 683, 687.)

In 1801 the proviso was changed so as to read as follows: " If any person entitled to any such writ of *scire facias*, or to make such entry, be at the time such right or title first descended or accrued within the age of twenty-one years," etc. (L. 1801, ch. 183, § 3.)

In the Revised Statutes the provision was: " If any person entitled to commence any action in this article specified, or to make any entry, avowry or cognizance, be at the time such title shall first descend or accrue within the age of twenty-one years," etc. (2 R. S. [1st ed.] 295, § 16.) " No person shall avail himself of any disability enumerated in this title, unless such disability existed at the time his right of action or of entry accrued." (Id. § 41.)

The revisers, in their note to section 16, after stating that it is a consolidation of the provisos in several sections in the revised laws, continue : " The English statute, 32 Henry

VIII, chapter 2, \* \* \* made provision for those who were under disabilities at the time of the passing the act, but not for subsequent disabilities. In the revision of Jones & Varick, 2 vol. 262, subsequent disabilities were provided for \* \* \* and the same difference in the language of the exceptions between writs of right and possessory actions exists. Whether it was accidental or designed there are now no means of determining. The Revisers have not met with any decision on the point; but the general language of the courts is, that a statute bar, having once begun to run, will continue to run, notwithstanding a subsequent disability. (10 J. R. 214; 20 J. R. 306; 3 J. Ch. 129.) There seems no reason for the distinction, but much for uniformity." (3 Revisers' Reports, ch. 4, title 2, § 16.)

The Code of Procedure provided that, " If a person entitled to commence any action for the recovery of real property, or to make an entry or defense founded on the title to real property, or to rents or services out of the same, be, at the time such title shall first descend or accrue within the age," etc. (Code of Procedure, § 88.) " No person shall avail himself of a disability unless it existed when his right of action accrued." (Id. § 106.)

The Code of Civil Procedure provides by section 408 that " a person cannot avail himself of a disability unless it existed when his right of action or of entry accrued."

We think the provision as now found in the Code of Civil Procedure has the same effect, so far as supervening disability is concerned, as when it stood in the Code of Procedure or the Revised Statutes. While verbal changes have been made and the language simplified, the substance has not been changed. The construction contended for by the plaintiffs loses sight of the word " first," which runs through all the legislation on the subject and is the controlling feature of the provision. There was but one cause of action against the defendants and that belonged to the ancestor in her lifetime, but upon her death passed with the land to her heirs. When did that cause of action *first* accrue ? Clearly in 1879 or 1880

when the defendants completed their elevated railroad and began to operate it. The statute blends ancestor and heir, who had but one cause of action between them, which did not *first* accrue upon the death of the ancestor, for the right to sue had existed for eight years before she died. The words "cause of action" are associated with the words "right of entry," and it is when either "first accrues," or when the title "first descends," that the disability, in order to be effective, must exist. When did the right of entry, or the cause of action, first accrue if not upon the construction of the elevated structure and the appropriation of the easements thereby? Any construction other than the one thus indicated gives the statute the same meaning as if the word "first" did not occur therein, and the effect would be that if one of the plaintiffs had died before she became of age leaving an infant heir, her disability would shift to the latter and thus the operation of the statute might be indefinitely postponed to the injury of the public. We think there was no intention by the last amendment of the statute, as was said by Mr. Justice BRADLEY of an act of Congress relating to the same subject, "to change the rule which has always, from the time of Henry VII, been applied to Statutes of Limitation, namely, the rule that no disability will postpone the operation of the statute unless it exists when the cause of action accrues and that when the statute begins to run no subsequent disability will interrupt it." (*McDonald* v. *Hovey*, 110 U. S. 619, 630.)

As all other questions involved in this appeal are resolved in favor of the defendants by our decision in the *Hindley* case, it follows that the judgment appealed from in this case must also be reversed and a new trial granted, with costs to abide the final award of costs.

CULLEN, Ch. J., GRAY, EDWARD T. BARTLETT, HAIGHT, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.