ROTHMANN v. INTERBOROUGH RAPID TRANSIT CO. et al.

(Supreme Court, Appellate Division, First Department.  February 7, 1913.)

LIMITATION OF ACTIONS (§ 55*)—INJURIES TO PROPERTY—CAUSE OF ACTION— "OPERATION."

   Where an elevated railroad was completed January 15, 1880, though not opened to the public until March 1, 1880, it was in "operation" from the former date, so that an action first brought by the defendant or his predecessors on February 28, 1900, to restrain its operation and maintenance, was barred by the statutory period of 20 years.

   [Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*

   For other definitions, see Words and Phrases, vol. 6, pp. 4992, 4993.]

   Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by Thomas Rothmann against the Interborough Rapid Transit Company and others.  From a judgment entered upon a decision after trial at Special Term (66 Misc. Rep. 378, 121 N. Y. Supp. 200), defendants appeal.  Reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and DOWLING, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

J. Osgood Nichols, of New York City, for appellants.
Arthur Furber, of New York City, for respondent.

McLAUGHLIN, J.   Plaintiff is the owner of certain real estate abutting on Second avenue in the city of New York.   Defendants have constructed, are maintaining, and operating an elevated railroad in that street, and this action was brought for an injunction and damages.   The trial court awarded plaintiff a judgment for rental damages, and an injunction against the maintenance of the railroad, unless defendants paid the plaintiff the damages to the fee, which were fixed at $3,300.   The defendants appeal from the judgment, and substantially the only question presented is whether, from the undisputed facts, defendants have acquired the right by prescription to maintain and operate the railroad.   The defendants, or one of them, commenced to construct an elevated railway in Second avenue in May, 1879, and it was completed by January 15, 1880, on which day the first train was run over the line, including the portion in front of plaintiff's property; but the road was not, in fact, opened to the public until March 1, 1880.   On February 28, 1900, one Sophie Sterns, who then owned the premises now owned by the plaintiff, commenced an action to enjoin two of the defendants, the Manhattan Railway Company and the Metropolitan Elevated Railway Company, the then owners of the elevated railway structure, from maintaining the same or operating trains thereon.   That action is still pending.   The present action was not commenced until October 17, 1908.

It may be, as contended by respondent, that the defendants have not acquired the right by prescription, unless they had acquired it at the time of the commencement of the action by Sophie Sterns, February 28, 1900.   Eaton v. Swansea Waterworks Co., 17 Q. B. 267; Workman v. Curran, 89 Pa. 226; Postlethwaite v. Payne, 8 Ind. 104.   Had they acquired such right at that time?   It seems to me there can be but one answer to the question.   The structure was completed as an elevated railroad January 15, 1880, and the statutory period commenced to run, as it seems to me, from that time, if not before.   A similar question was considered in Hindley v. Manhattan Ry. Co., 185 N. Y. 335, 78 N. E. 276, and the court, referring to its decision in Lewis v. N. Y. & H. R. R. Co., 162 N. Y. 202, 56 N. E. 540, said:

"After deciding that the company had acquired no right by adverse possession as against the city, we held that it had acquired certain rights by prescription as against the abutting owners.   There was no claim of title to the street easements, except by the act of constructing an elevated railroad in the public street.   That act alone constituted the entry, and the maintenance of the viaduct, with the operation of trains thereon, constituted the possession, which we held in 20 years ripened into a prescriptive right."

When the Sterns action was commenced the road had been in complete operation for over 20 years, and this gave the defendants the right as against her, or her successors in interest, to thereafter maintain and operate it.   Respondent urges, and this seems to have been the theory upon which the trial court proceeded, that the statutory period did not commence until March 1, 1880, when the road was opened to the public.   This question was also considered, as I read

the opinion, and decided adversely to the respondent's contention in Bremer v. Manhattan Ry. Co., 191 N. Y. 333, 84 N. E. 59. In that case it was made to appear that after the structure had been completed the defendants had increased the length of their trains and changed · the method of operating them from steam to electricity, for which purpose it had increased the structure by putting down a third rail. It was held that such changes did not affect the defendants' right to maintain and use the original structure, the court saying:

> "In the case before us the right asserted and exercised by the defendants was the construction and operation of an elevated railroad track as an entity. The operation and length of the trains were mere details of the right, not substantial elements or limitations of it. The increase in the size of, or injurious changes in, the structure, would be an increase of user, for which the plaintiffs might seek compensation. In this case they seem trivial; but, if the plaintiffs have suffered damage, they may recover for such damage, but not for the main structure. Thus we find no evidence in the case to defeat the right acquired by the defendants through prescription to maintain and operate their railroad."

See, also, Scallon v. Manhattan Ry. Co., 185 N. Y. 360, 78 N. E. 284, 7 Ann. Cas. 168.

Here, as we have seen, the defendants commenced to erect the road in 1879, and the structure was entirely completed January 15, 1880. They then, at least, asserted their right to use the street in front of plaintiff's premises for the erection of an elevated railroad and to maintain it and operate trains thereon. This they did by entering the street, constructing the railroad, and by the operation of a train. The frequency with which trains might thereafter be operated, the length of the trains, or the purpose for which they were run, were, as pointed out in the Bremer Case, mere details of the right asserted by defendants, and not limitations of it.

Attention is called to certain authorities as holding that the prescriptive period did not commence to run until the road was thrown open to the public. But an examination of them shows that it made no possible difference whether that date or the time when the road was completed were chosen, and the court did not have under consideration or determine, in any of them, whether the statutory period commenced to run with the completion of the railroad or the operation thereon of trains for the public.

If the foregoing views be correct, then it follows the judgment appealed from must be reversed, and the complaint dismissed, with costs in the action and in this court to the defendant.

INGRAHAM, P. J., and CLARKE and DOWLING, JJ., concur.

LAUGHLIN, J. (dissenting). I dissent, upon the ground that the *substantial damages* in this class of cases are caused by the *operation* of the railroad, and therefore the statute of limitations as to operation does not commence to run until the commencement of public operation at regular intervals, as distinguished from slight occasional operation for the purpose of experimenting and testing.